**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Leevaughn WILSON, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 28, 2007.

Filed June 11, 2007.

Robert E. Mielnicki, Pittsburgh, for appellant.

Margaret K. Baker, Asst. Dist. Atty., Pittsburgh, for the Com., appellee.

BEFORE: MUSMANNO, BOWES, and JOHNSON, JJ.

OPINION BY JOHNSON, J.:

¶ 1 Leevaughn Wilson appeals from the judgment of sentence entered following his convictions of two counts each of possession of a controlled substance and possession of a controlled substance with intent to deliver, and one count of driving with a suspended license. *See* 35 P.S. §§ 780–113(a)(16), (30); 75 Pa.C.S. § 1543. Wilson asserts that the trial court erred in denying his motion to suppress, claiming that the drugs were seized pursuant to an illegal *Terry* search and in violation of the "plain feel" and "plain view" doctrines. Wilson also contends that the trial court erred in allowing the Commonwealth's expert to testify to his state of mind and in failing to grant him a mistrial after the prosecutor commented improperly on his right to remain silent during closing arguments. Upon review, we conclude that although the officer conducted a lawful *Terry* frisk, neither his testimony nor the physical characteristics of the seized evidence established that the object he felt in Wilson's coat pocket reasonably appeared to be a weapon. Therefore, the officer's subsequent search and seizure of the drugs in Wilson's coat pocket exceeded the lawful scope of *Terry*. We further conclude that the drugs the officer seized were not alternatively admissible under the "plain view" or "plain feel" exceptions to the warrant requirement. Consequently, the officer obtained the drugs from Wilson's coat pocket in violation of Wilson's constitutional right to be free from an unreasonable search and seizure. Accordingly, we reverse the judgment of sentence and remand for proceedings consistent with this Opinion.

¶ 2 The trial court summarized the facts of this case as follows:

On January 25, 2004[,] at approximately 7:43 P.M., Officer Clarence L. Gunter, a police officer with the Allegheny County Housing Authority, observed a vehicle fail to stop at a stop sign at the intersection of Bedford and Chauncy Drives [in the Hill District section of Pittsburgh]. Officer Gunter pulled the vehicle over, called in the license plate, and approached the vehicle. The driver of the vehicle, [ ] the Defendant, did not have identification, so he gave the officer his date of birth. Officer Gunter called in the information and found out that the Defendant did not have a driver's license. The officer observed the Defendant checking his mirrors, putting his hands in his pockets, and appearing very nervous. Both the driver's and passenger's side windows were down, despite the cold weather. Officer Gunter told the Defendant he would be issuing him citations for his traffic violations. He asked the Defendant if he would mind getting out of the car so that he could perform a pat-down search on him. The Defendant complied and the officer felt a large hard ball in the Defendant's front left jacket pocket. Concerned that it was a weapon, Officer Gunter looked in the pocket and saw what he believed to be crack cocaine, at which point [he retrieved the bag and placed] the Defendant ... under arrest. The Defendant began to struggle with the officer. He got away from the officer's grasp, jumped back into the car, and flung [another] baggie out of the passenger side window. [The baggie retrieved from the Defendant's pocket contained] 12 knotted plastic baggie corners, which was tested by the Allegheny County Crime Laboratory and found to be positive for cocaine with a net collective weight of 1.743 grams. [The baggie that the Defendant tossed out of the window contained] 21 loosely knotted yellow balloons and ... a bundle of 10 taped white bags stamped "Chicago." These items were also tested by the Crime Lab and

found to be positive for heroin with a collective net weight of 2.018 grams and 0.339 grams, respectively.

Trial Court Opinion (T.C.O.), 6/28/06, at 2–3 (citation to Notes of Testimony (N.T.) omitted).

¶ 3 The police eventually subdued Wilson and arrested him. Thereafter, the Commonwealth charged him with two counts each of possession of a controlled substance and possession of a controlled substance with intent to deliver. In addition, the Commonwealth charged Wilson with tampering with evidence, resisting arrest and driving with a suspended license. On May 25, 2005, Wilson filed an omnibus pre-trial motion to suppress, asserting that the drugs were obtained in violation of his right to be free from an unreasonable search and seizure. On August 15, 2005, the trial court denied Wilson's motion and the case proceeded to trial.

¶ 4 At trial, Detective David Schultz of the Allegheny County Police Department testified as an expert over Wilson's objection. He stated that in his professional opinion, Wilson possessed the narcotics with the intention of delivering them to third parties. When the Commonwealth concluded its case-in-chief, the trial court granted a judgment of acquittal on the charge of tampering with evidence. During closing argument, the prosecutor instructed the jury that when a defendant does not confess his/her intention to deliver drugs to a third party, his/her intent must be proven by the facts and circumstances of each case. At the conclusion of a three day trial, the jury found Wilson guilty on all four drug-related counts, but not guilty of resisting arrest. The trial court found Wilson guilty of the summary offense of driving with a suspended license. On March 21, 2006, the trial court sentenced Wilson to a mandatory period of incarceration of not less than three years

nor more than six years in addition to a fine of $15,000.00.

¶ 5 Wilson now appeals to this Court, raising the following questions for our consideration:

1. Whether the lower court erred in denying Appellant's Motion to Suppress when the physical evidence was seized pursuant to an unlawful search conducted without the presence of a reasonable articulable belief that Appellant was involved in criminal activity or that he was armed and dangerous?

2. Whether the lower court erred in allowing the Commonwealth's expert witness to testify as to Appellant's state of mind?

3. Whether the lower court erred in failing to grant Appellant a mistrial when the prosecutor during his closing arguments made comments that improperly drew attention [to] Appellant's exercise of his right to remain silent?

Brief for Appellant at 4.

¶ 6 Wilson's first question challenges the trial court's denial of his motion to suppress.

Where a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible. In reviewing the ruling of a suppression court, our task is to determine whether the factual findings are supported by the record. Where, as here, the defendant challenges an adverse ruling of the suppression court, we will consider only the evidence for the Commonwealth and whatever evidence for the defense which is uncontradicted on the record as a whole. If there is support in the record, we are bound by the facts as found by

the suppression court, and we may reverse that court only if the legal conclusions drawn from these facts are erroneous. Moreover, even if the suppression court did err in its legal conclusions, the reviewing court may nevertheless affirm its decision where there are other legitimate grounds for admissibility of the challenged evidence.

*Commonwealth v. Andersen,* 753 A.2d 1289, 1291 (Pa.Super.2000) (citations and internal quotation marks omitted).

¶ 7 Wilson first contends that the evidence seized from his person should have been suppressed because Officer Gunter did not have the requisite reasonable suspicion to conduct a *Terry* frisk. Brief for Appellant at 11–15. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Wilson concedes that he was lawfully stopped for a violation of the Motor Vehicle Code and that Officer Gunter was permitted under *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), to ask him to step out of his vehicle as a matter of right. Brief for Appellant at 13. Wilson argues, however, that during the routine traffic stop and investigatory detention, Officer Gunter did not develop reason to believe that he was armed and dangerous, and thus, the *Terry* frisk of his outer garments was illegal. Brief for Appellant at 12–13.

¶ 8 "If, during the course of a valid investigatory stop, an officer observes unusual and suspicious conduct on the part of the individual which leads him to reasonably believe that the suspect may be armed and dangerous, the officer may conduct a pat-down of the suspect's outer garments for weapons." *Commonwealth v. E.M./Hall,* 558 Pa. 16, 735 A.2d 654, 659 (1999). In order to establish reasonable suspicion, the police officer must articulate specific facts from which he could reasonably infer that the individual was armed

and dangerous. *See Commonwealth v. Gray,* 896 A.2d 601, 606 (Pa.Super.2006). When assessing the validity of a *Terry* stop, we examine the totality of the circumstances, *see id.,* giving due consideration to the reasonable inferences that the officer can draw from the facts in light of his experience, *while disregarding any unparticularized suspicion or hunch. See Commonwealth v. Zhahir,* 561 Pa. 545, 751 A.2d 1153, 1158 (2000).

¶ 9 At the suppression hearing, Officer Gunter testified that Wilson appeared to be nervous and fidgety throughout their encounter. N.T. (Suppression), 8/15/05, at 5–7. When Officer Gunter first pulled Wilson over, Wilson was constantly looking into his rear view and side mirrors and his "shoulders and stuff" were moving around. N.T. (Suppression), 8/15/05, at 5–6. Officer Gunter got out of his police cruiser, approached Wilson's vehicle and asked him for identification, noticing that Wilson's hands were placed in his lap. N.T. (Suppression), 8/15/05, at 6. After Officer Gunter went to the police cruiser and returned to Wilson's vehicle to issue him a citation, Wilson "had his hands in his coat pocket like he was reaching around for something[,]" still appearing nervous and fidgety. N.T. (Suppression), 8/15/05, at 7. Officer Gunter testified that he was "concerned" because he was unable to see Wilson's hands and that from experience people usually put their hands in their pocket to conceal a weapon, among other things. N.T. (Suppression), 8/15/05, at 6.

¶ 10 Based on the totality of the circumstances, we conclude that Officer Gunter articulated specific facts from which he could infer that Wilson might be armed and dangerous. Wilson's suspicious gestures and movements, in conjunction with the fact that he placed his hands inside his coat pocket as if he were reaching for

something, could lead Officer Gunter to reasonably conclude that his safety was in jeopardy. *See Commonwealth v. Mesa*, 453 Pa.Super. 147, 683 A.2d 643, 646 (1996) (finding officer had articulable suspicion the appellant might be armed and dangerous when he observed the appellant "moving around a great deal" in the passenger seat); *Commonwealth v. Morris*, 422 Pa.Super. 343, 619 A.2d 709, 712 (1992) (finding officer had articulable suspicion the appellant might be armed and dangerous when he observed the appellant's "furtive movements in stuffing a brown bag under the front passenger seat of the vehicle."). *See also Gray*, 896 A.2d at 606 n. 7 (stating that while nervousness alone will not establish reasonable suspicion, it is a relevant factor to be considered in the totality of the circumstances). As such, Officer Wilson was justified in subjecting Wilson to a *Terry* frisk in order to ensure his own safety.

¶ 11 Wilson next argues that even if Officer Gunter was lawfully entitled to conduct a *Terry* frisk, the officer's frisk exceeded the scope of a permissible *Terry* pat-down, since "the search went beyond that which was necessary to discover the presence of weapons [that] may be used to endanger [the] safety of the officer[.]" Brief for Appellant at 16. We agree. Under Pennsylvania case law and *Terry*, a police officer may conduct a limited pat-down search of an individual's outer clothing "in an attempt to discover the presence of weapons which may be used to endanger the safety of police or others." *Commonwealth v. Graham*, 554 Pa. 472, 721 A.2d 1075, 1078 (1998) (opinion announcing the judgment of court) (citations and internal quotation marks omitted). "Because the sole justification of the search ... is the protection of the police officer and others nearby, ... it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Commonwealth v. Canning*, 402 Pa.Super. 438, 587 A.2d 330, 331 (1991) (citation and internal quotation marks omitted). Following a protective pat-down search of a suspect's person, a more intrusive search can only be justified where the officer *reasonably believed* that what he had felt appeared to be a weapon. *See Commonwealth v. Taylor*, 565 Pa. 140, 771 A.2d 1261, 1269 (2001) (opinion announcing the judgment of court) ("Therefore, in order to reach into a suspect's pocket during a frisk the officer would have to feel something that reasonably appears to be a weapon."); *Canning*, 587 A.2d at 331. "If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed." *E.M./Hall*, 735 A.2d at 661.

¶ 12 In this case, when Officer Gunter frisked Wilson, he felt a zip-lock bag containing 1.743 grams of cocaine packaged into 12 knotted plastic baggie corners. At the suppression hearing, Officer Gunter testified to the circumstances surrounding his pat-down and retrieval of the drugs from Wilson's pocket as follows:

> I believe it was in his left jacket pocket of the winter coat that I felt a large ball that was hard, and I was concerned because I thought it was a weapon of some sort. When I asked him what it was, he didn't say anything, and when I looked in his pocket I noticed what I believed was a bag of crack cocaine.

N.T. (Suppression), 8/15/05, at 7.

¶ 13 After careful consideration, we conclude that Officer Gunter failed to articulate any reasonable belief that what he felt in Wilson's pocket appeared to be a weapon. Instead, Officer Gunter merely testified that he felt a "hard, large ball." These descriptive terms, in and of them-

selves, are insufficient to establish that Officer Gunter's "concern" that he felt "a weapon of some sort" was anything more than an unparticularized suspicion or hunch. Officer Gunter's "concern" was also not supported by the physical facts and characteristics of the evidence that was actually seized from Wilson's person. Without any testimony to prove otherwise, we simply cannot fathom how a reasonable person could conclude that the physical sensation of touching a round cluster of 12 tiny knotted plastic baggie corners—which contained a net weight of 1.743 grams of cocaine—could realistically produce the mental image or fear of a weapon. Consequently, the record failed to demonstrate that Officer Gunter reasonably believed that the object in Wilson's coat pocket could possibly be used as an instrument to assault him. *See Canning,* 587 A.2d at 331 (concluding that the "the items retrieved from appellant's pocket, two small plastic bags, one containing a white powder and one containing a green weed, do not feel like a gun, knife, or blackjack or anything else.") (internal citation omitted); *Commonwealth v. Freeman,* 222 Pa.Super. 178, 293 A.2d 84, 86 (1972) ("[I]t is inconceivable that one glassine bag of narcotics could have felt like a weapon."), *and compare with Taylor,* 771 A.2d at 1270 (per Newman, J., joined by Cappy and Castille, JJ.) (stating that even though the officer testified that what he felt was not a gun or knife, the officer could have reasonably believed that hard, cylinder-type, four-inch object was a weapon of some sort when in fact it was a prescription bottle); *Commonwealth v. Dial,* 218 Pa.Super. 248, 276 A.2d 314, 319 (1971), rev'd on other grounds by 445 Pa. 251, 285 A.2d 125 (1971) (concluding that "a bottle of pills and a hypodermic needle ... certainly bear some resemblance to possible weapons when felt through the pocket."). *See also Taylor,* 771 A.2d at 1275 n. 5 (Nigro,

J. concurring and dissenting, joined by C.J. Flaherty and Zappala, J.) (finding that officer could not have reasonably believed that four-inch long cylinder object was a weapon of some sort when he determined that it was neither a knife or gun).

¶ 14 "Nothing in *Terry* can be understood to allow .... any search [whatsoever] for anything but weapons." *Canning,* 587 A.2d at 331 (citation omitted). A police officer may not use the pretext of believing he/she felt a weapon to legitimize the retrieval of any and all objects found on a suspect's person when that belief is not reasonable, *i.e,* not supported by articulable facts or the physical characteristics of the evidence seized. Therefore, in the absence of evidence demonstrating a reasonable belief that what he felt appeared to be a weapon, Officer Gunter's subsequent search and seizure of the object in Wilson's pocket transcended the scope of *Terry. See Taylor,* 771 A.2d at 1269 ("[I]n order to reach into a suspect's pocket during a frisk the officer would have to feel something that reasonably appears to be a weapon."). The trial court, accordingly, committed an error of law in failing to suppress the drugs as the product of an unlawful search and seizure.

¶ 15 Having concluded that the trial court should have suppressed the drugs Officer Gunter confiscated from Wilson's coat pocket, we will now analyze the record to determine if the officer could have lawfully seized the drugs under the plain feel or plain view doctrines. *See Andersen,* 753 A.2d at 1291 (stating that "even if the suppression court did err in its legal conclusions, the reviewing court may nevertheless affirm its decision where there are other legitimate grounds for admissibility of the challenged evidence.") (citation omitted). After review, we conclude that application of the plain feel or plain

view doctrines to the facts now before us do not result in the admissibility of the drugs.

¶ 16 Under the plain feel exception, "a police officer may seize *non-threatening contraband* detected through the officer's sense of touch during a *Terry* frisk if the officer is lawfully in a position to detect the presence of contraband, the incriminating nature of the contraband is immediately apparent from its tactile impression and the officer has a lawful right of access to the object." *Commonwealth v. Stevenson,* 560 Pa. 345, 744 A.2d 1261, 1265 (2000) (emphasis added). In this case, Officer Gunter reached into Wilson's coat pocket under the belief that it contained a weapon, as opposed to contraband. The record failed to establish that Officer Gunter felt drugs, drug paraphernalia, or other non-threatening contraband during his pat-down of Wilson. Therefore, without any evidence indicating that Officer Gunter felt non-threatening contraband, the "plain feel" doctrine is inapplicable to the case at bar and cannot justify the seizure of drugs from Wilson's coat pocket. *See Taylor,* 771 A.2d at 1269 n. 4 (stating that since the officer testified that the object in the appellant's pocket felt like a weapon, and not contraband, the validity of the search depends on a *Terry* analysis rather than the plain feel doctrine).

¶ 17 Pursuant to the plain view doctrine, the warrantless seizure of a piece of evidence is justified when (1) the officer is at a lawful vantage-point, (2) the incriminating character of the object is immediately apparent, and (3) the officer has a lawful right of access to the object. *See Commonwealth v. McCree,* 924 A.2d 621, 625, 627–28 (Pa.2007); *Commonwealth v. McCullum,* 529 Pa. 117, 602 A.2d 313, 320 (1992). "In order to determine whether the officers were at a 'lawful vantage point,' we consider whether their conduct

violated Fourth Amendment principles." *Commonwealth v. English,* 839 A.2d 1136, 1139 (Pa.Super.2003).

¶ 18 In *Graham,* a plurality opinion, the Supreme Court of Pennsylvania determined that the plain view doctrine did not allow an officer to seize contraband he saw when shining a flashlight into the appellant's back pocket after a *Terry* pat-down revealed the object was not a weapon. *See* 721 A.2d at 1080 (per Nigro, J., joined by Flaherty, C.J., with Zappala, Cappy, Castille, and Newman, JJ. concurring in the result without statement). In that case, the officer reasonably believed the appellant was armed and dangerous and conducted a *Terry* frisk of the appellant's outer garments, feeling what he believed was a Lifesavers container. *See id.* at 1076–1079. The *Graham* plurality stated that although the officer was justified in performing a *Terry* frisk on the appellant, the frisk exceeded the scope of a permissive pat-down when he subsequently searched the appellant's back pocket with the flashlight and seized the container because it appeared to hold cocaine. *See id.* at 1079 (stating that "once Officer Dawley's pat-down revealed Appellant was not carrying a weapon, any continued search exceeded the scope authorized under *Terry.*"). The *Graham* plurality then addressed the Commonwealth's alternative argument that the officer's seizure of the container was valid under the "plain view" doctrine. *See id.* In reaching its conclusion that the contraband was not visible to the officer from a lawful vantage point, the *Graham* plurality noted that "plain view is perhaps better understood ... not as an independent exception to the warrant clause, but simply as an extension of whatever the prior justification for an officer's access to an object may be." *Id.* at 1079 (citation and internal quotation marks omitted). Relying on this principle, the

*Graham* plurality concluded the officer unlawfully extended a *Terry* search, by shining the flashlight into the appellant's back pocket, after he determined that the container was not a weapon. *See id.* at 1080 ("Thus, there was no independent justification to extend the search, i.e. shine the flashlight, once the officer determined that Appellant was unarmed."). "Since the plain view doctrine cannot justify extending a warrantless search," the *Graham* plurality ultimately decided the officer's act of shining the flashlight could not be legitimized under the plain view doctrine. *Id.*

¶ 19 While the *Graham* Court's discussion of the plain view doctrine and corresponding legal rationale did not achieve a majority, and is not precedent, we nonetheless conclude that it provides substantial guidance. Because the four concurring Justices agreed in the result without statement, it logically follows that all six participating Justices, at a minimum, endorsed the principle that under the facts of the case, the evidence was not alternatively admissible under the plain view doctrine. Therefore, although *Graham* is not binding authority, we deem it to be highly instructive of our Supreme Court's general stance on the plain view issue and will apply its reasoning to the facts of this case.

¶ 20 Here, after Officer Gunter conducted a pat-down of Wilson and felt an object in his front pocket, he asked Wilson, "what [is] it?" N.T., (Suppression), 8/15/05, at 7. When Wilson refused to respond, Officer Gunter "looked" into his pocket, saw what he "believed" was crack cocaine and retrieved the plastic baggie. N.T., (Suppression), 8/15/05, at 7. *See also N.T.*, (Trial), 1/12/06, at 34 ("So I kind of like bent over, looked in his pocket and saw a clear plastic baggie, large; and I kind of retrieved it, saw that it was crack cocaine, [and] handed it to my sergeant[.]"). As mentioned

*supra,* the evidence failed to demonstrate that Officer Gunter reasonably believed that the object he felt in Wilson's pocket was a weapon, and Officer Gunter did not testify that the object felt like non-threatening contraband. Consequently, as in *Graham,* Officer Gunter's pat-down "ascertained that [Wilson] was not armed and dangerous" and "any continued search exceeded the scope authorized under *Terry.*" *Graham,* 721 A.2d at 1079. Because Officer Gunter's prior justification for access to the object in Wilson's pocket had expired under *Terry,* he had no independent justification to extend the search, *i.e.,* "look" into Wilson's front pocket. *See id.* at 1079–80. Therefore, "[s]ince the plain view doctrine cannot justify extending a warrantless search," we conclude that it does not validate Officer Gunter's subsequent search of Wilson's front pocket and seizure of the drugs. *Id.* at 1080.

¶ 21 In summary, Officer Gunter exceeded the scope of *Terry* when he proceeded to search Wilson's pocket after conducting a frisk that did not reveal the presence of a weapon. The drugs were not alternatively admissible under either the plain view or plain feel doctrines. As such, the trial court erred when it failed to suppress the drugs that were seized from Wilson's coat pocket in violation of his constitutional right to be free from an unreasonable search and seizure. For these reasons, we reverse the trial court's judgment of sentence and remand for proceedings consistent with this Opinion.

¶ 22 Judgment of sentence **REVERSED.** Case **REMANDED** for proceedings consistent with this Opinion. Jurisdiction **RELINQUISHED.**