**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Stephen P. THOMPSON, Appellant.**

Superior Court of Pennsylvania.

Submitted July 30, 2007.

Filed Dec. 10, 2007.

Reargument Denied Feb. 7, 2008.

Timothy L. Clawges, Public Defender, Carlisle, for appellant.

Michelle H. Sibert, Assistant District Attorney, Carlisle, for Commonwealth, appellee.

BEFORE: TODD, KELLY and JOHNSON, JJ.

OPINION BY KELLY, J:

¶ 1 Appellant, Stephen P. Thompson, appeals from the judgment of sentence [1] entered in the Cumberland County Court of Common Pleas following his convictions of possession with intent to deliver a controlled substance, and possession of a controlled substance. He argues, in part, that police unlawfully searched him and removed nonthreatening items from his pocket following a protective pat down, and that the Commonwealth did not offer sufficient evidence at the suppression hearing that the incriminating nature of the items removed was immediately apparent to the officer conducting the pat down. Thus, the trial court erred when it denied his pre trial motion to suppress evidence. We agree, and accordingly vacate the judgment of sentence.

¶ 2 Following a traffic stop, a police officer removed Appellant from his vehicle; he was searched and a digital scale and some currency were removed from his person. Police then called in a drug detection dog which alerted police to the presence of drugs in the car, and police obtained a warrant to search the vehicle, in which they discovered the contraband. After a pretrial hearing on Appellant's motion to suppress evidence, the trial court made the following findings of facts, by which, as we determine they are supported by the record, we are bound. *Commonwealth v. Ortiz,* 786 A.2d 261, 263 (Pa.Super.2001), *appeal denied,* 568 Pa. 717, 797 A.2d 912 (2002).

The events pertaining to the initial detention were within the normal bounds of a traffic stop. Detective Kurtz alerted Officer Fones that [Appellant] was driving in the Borough of Carlisle under a suspended license. Officer Fones, an officer of 23 years and a recognized expert in the field of narcotics and drug trafficking, was familiar with [Appellant's] car, having arrested him previously for drug related issues. Officer Fones testified that around 7:20 p.m., he saw the familiar white BMW sedan with the Maryland registration and saw [Appellant] operating the vehicle. The officer proceeded to pull over Appellant. As he approached the vehicle, [Appellant] started to get out of the vehicle, at which point Officer Fones advised him to return the car and asked for his license and registration. [Appellant] provided the officer with the car's registration, which was not in his name, but was unable to provide him with a license, saying that the did not have his wallet with him.

---

1. We note that Appellant erroneously appeals from the "order entered November 28." Instead, Appellant should have appealed from the judgment of sentence entered on that date. We have amended the caption accordingly.

Officer Fones informed Appellant that he would be issuing a citation for driving under suspension and asked him to turn the vehicle off and wait until he returned with the ticket. Instead of rolling down his window, Appellant kept the door open throughout the entire conversation and reopened the door when Officer Fones returned with the citation. After issuing the citation to [Appellant], the officer informed him that their business had concluded.

Although the officer had dismissed him, he continued to ask [Appellant] questions after the conclusion of the traffic stop. He asked [Appellant] if he had any drugs or weapons in the car and if he could search the car. [Appellant] denied the search request. Officer Fones has testified that after he asked these questions Appellant's entire demeanor changed. [Appellant] appeared uncomfortable and fidgety and reached his right hand into the pocket of his hooded sweatshirt. The officer asked him to remove his hand from the pocket. [Appellant] then started to place the keys in the ignition at which point Officer Fones advised him that he could not drive away from the scene. Following this statement [Appellant] reached again into the front pocket of his hooded sweatshirt. Officer Fones asked [Appellant] to put his hands in plain view on the dashboard. [Appellant] complied at first, but then placed his hands back into the pocket of his sweatshirt.

Having already asked Appellant not to reach into the pocket and thinking he was reaching for a gun, Officer Fones drew his service revolver. [Appellant] was ordered out of the vehicle and patted down by Detective Kurtz, who had arrived at the scene during the course of the questioning. Pursuant to the pat down the officers removed a set of digital scales (commonly used for weighing cocaine and other controlled substances) and more than $900.00 in cash. [Appellant] was then handcuffed and placed in Officer Fone's car.

A canine unit was requested to the scene and the dog alerted on [Appellant]'s vehicle. Based on the dog alert, a search warrant was requested, issued, and executed on the vehicle. Contraband was recovered during search of the vehicle.

(Trial Court Opinion, 2/9/07 at 2–4) (footnotes omitted).

¶ 3 The trial court denied Appellant's motion to suppress this evidence, found him guilty of the above offenses, and sentenced him to seven to fifteen years imprisonment. Appellant appealed, raising the following issue for our review: "Did the court err when it refused to suppress evidence obtained from [appellant]'s person and vehicle, as result of a second detention after completion of a traffic stop?" (Appellant's Brief at 5).[2]

¶ 4 Appellant argues that the initial stop of his vehicle was unlawful, and was a pretext to seize him and his vehicle without a warrant. Additionally, he asserts that after the initial traffic stop concluded, Officer Fones lacked the reasonable suspicion necessary to initiate the investigative detention during which he was forcibly removed from his car and patted down. Appellant also argues that the pat down and subsequent search of his person ex-

---

2. Appellant also presented a second question that is in substance subsumed into the first: "Did the court err in finding that police had probable cause to search [Appellant]?" In addition to challenging the initial traffic stop and the subsequent detention, Appellant challenges the lawfulness of the pat down and the resulting search of his person.

ceeded the bounds of *Terry*;[3] he asserts that the officer conducting the pat down did not limit his frisk to a search for weapons, and unlawfully searched his person, seizing a scale and some currency. He argues that there was no evidence that the officer conducting the pat down could detect the "incriminating nature" of the objects he felt and removed. For these reasons, Appellant concludes, the evidence found subsequent to the detention and search of his person should have been suppressed.

¶ 5 In reviewing a trial court's denial of a motion to suppress, we determine whether the record supports its factual findings. *Ortiz, supra,* at 263. We "consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. We are bound by the suppression court's findings if they are supported by the record, and may only reverse the suppression court if the legal conclusions drawn from the findings are in error." *Id.* (citations omitted). In suppression hearings, "[t]he Commonwealth shall have the burden of going forward with the evidence and of establishing that challenged evidence was not obtained in violation of the defendant's rights." Pa.R.Crim.P. 581(h).

¶ 6 This Court has addressed the nature of a seizure or detention following a traffic stop, concluding:

> [W]here the purpose of an initial traffic stop has ended and a reasonable person would not have believed that he was free to leave, the law characterizes a subsequent round of questioning by the police as an investigative detention or arrest. Reasonable suspicion exists only where the officer is able to articulate specific observations which, in con-

junction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of intrusion warrant a man of reasonable caution in the belief that the action taken was appropriate.

> Where the investigative detention at issue follows a lawful traffic stop, the officer must demonstrate cause for suspicion after the end of the initial stop, and independent of any basis on which he conducted the prior stop.

*Commonwealth v. Jones,* 874 A.2d 108, 116–17 (Pa.Super.2005) (internal citations and quotation marks omitted).

¶ 7 We have also previously addressed the constitutional requirements of an investigative detention:

> Our Supreme Court has mandated that law enforcement officers, prior to subjecting a citizen to an investigatory detention, must harbor at least a reasonable suspicion that the person seized is then engaged in unlawful activity. The question of whether reasonable suspicion existed at the time of an investigatory detention must be answered by examining the totality of the circumstances to determine whether the officer who initiated the stop had a **particularized and objective** basis for suspecting the individual stopped. Thus, to establish grounds for reasonable suspicion, the officer must articulate specific observations which, in conjunction with reasonable inferences derived from those observa-

---

3. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

tions, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity.

Although a police officer's knowledge and length of experience weigh heavily in determining whether reasonable suspicion existed, our Courts remain mindful that the officer's judgment is necessarily colored by his or her primary involvement in the often competitive enterprise of ferreting out crime. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of the [intrusion] warrant a man of reasonable caution in the belief that the action taken was appropriate. **This inquiry will not be satisfied by an officer's hunch or unparticularized suspicion.**

\* \* \*

Our courts have determined, on several occasions, that neither furtive movements nor excessive nervousness provide a sufficient basis upon which to conduct an investigatory detention.

*Commonwealth v. Reppert,* 814 A.2d 1196, 1203–05 (Pa.Super.2002) (internal citations and quotation marks omitted) (emphasis in original).

¶ 8 When there is a particularized and objective basis for detention, and an officer "observes conduct which leads him to believe the suspect may be armed and dangerous, the officer may pat down the suspect's outer garments for weapons. If no weapons are found, the suspect is free to leave if the officer concludes he is not involved in any criminal activity." *Commonwealth v. Pakacki,* 587 Pa. 511, 901 A.2d 983, 988 (2006) (internal citations and quotation marks omitted). Weapons found as a result of this pat down may be

seized. *See id.* Nonthreatening contraband may be seized only if it is discovered in compliance with the plain feel doctrine:

> Under the plain feel doctrine, a police officer may seize non-threatening contraband detected through the officer's sense of touch during a *Terry* frisk if the officer is lawfully in a position to detect the presence of contraband, the incriminating nature of the contraband is immediately apparent from its tactile impression and the officer has a lawful right of access to the object. **[T]he plain feel doctrine is only applicable where the officer conducting the frisk feels an object whose mass or contour makes its criminal character immediately apparent. Immediately apparent means that the officer readily perceives, without further exploration or searching, that what he is feeling is contraband.** If, after feeling the object, the officer lacks probable cause to believe that the object is contraband without conducting some further search, the immediately apparent requirement has not been met and the plain feel doctrine cannot justify the seizure of the object.

*Id.* at 989 (internal citations omitted) (emphasis added).

¶ 9 Appellant's first claim is that the initial stop was a pretext for an unlawful seizure. Appellant provides no citation to relevant authorities in support of this claim, and thus waives it. *See* Pa.R.A.P. 2119(b); *see also Commonwealth v. Russell,* 445 Pa.Super. 510, 665 A.2d 1239, 1246 (1995). Moreover, we note that even if this claim was not waived it would afford no relief for Appellant; Officer Fones had information from another officer that Appellant was driving with a suspended license. This information gave Officer Fones reasonable suspicion that Appellant was violating a provision of the vehicle code, and thus justified the initial stop.

*See* 75 Pa.C.S.A. § 6308(b); *Commonwealth v. Ulman*, 902 A.2d 514, 518 (Pa.Super.2006) (noting that the standard for traffic stops in § 6308(b) was amended from "articulable and reasonable grounds" to the lower threshold of "reasonable suspicion.)"

▮▮▮ ¶ 10 Appellant's next claim is that after the conclusion of the initial traffic stop, no circumstances arose to justify a second, investigative detention. The trial court found that Appellant was "uncomfortable and fidgety," and that he "refused to keep his hands in plain view and attempted to drive away from the scene while under suspension of license." (Trial Court Opinion, at 9). The trial court also noted the particular relevance of Appellant's reaching into his pocket when specifically directed by Officer Fones to keep his hands in view, leading Fones to believe Appellant may have been reaching for a gun. (*Id.*) The trial court found that these facts, in light of Officer Fones' experience as a narcotics officer, his knowledge of Appellant's prior drug convictions, and his knowledge that drug dealers often arm themselves, gave Fones "more than a hunch that the subject was involved in illegal activities." (*Id.*) The record supports this finding; Officer Fones did articulate specific facts from which he could reasonably infer that his safety was compromised. *See Commonwealth v. Wilson*, 927 A.2d 279, 284–85 (Pa.Super.2007) (finding officer had reasonable suspicion for protective frisk when he observed appellant make numerous suspicious movements and gestures, and appellant put his hand into his coat pocket). The trial court found that Officer Fones was justified in subjecting Appellant to a *Terry* frisk and we will not disturb this finding.

▮▮▮ ¶ 11 The final argument advanced by Appellant, and one which we find dispositive, is his challenge of the pat down and subsequent search. In dismissing this issue the trial court found:

During the frisk, Detective Kurtz felt a set of digital scales in the right hand pocket of [Appellant's] sweatsuit and proceeded to extract the set of scales along with more than $900 in cash. Such scales are commonly used by drug dealers in the weighing of controlled substances such as cocaine and marijuana. Considering the prevalent use of such paraphernalia, a set of digital scales is a readily identifiable object to an experienced detective, such as Detective Kurtz, who has doubtlessly encountered such scales on multiple occasions.

(*Id.* at 10–11). Upon review, we find that this finding of the trial court is not supported by the record, and the legal conclusion that the search was lawful is in error.

¶ 12 Only one Commonwealth witness, Officer Fones, testified at the suppression hearing. He did not conduct the pat down of Appellant, which was performed by Detective Kurtz who did not testify. The Commonwealth merely offered an affidavit drafted by Kurtz after the pat down for the purpose of obtaining a warrant for Appellant's car. Officer Fones gave no testimony as to the nature of what Detective Kurtz felt, and in the affidavit Kurtz described the pat down only in a cursory fashion: "During a pat down of [Appellant's] person, Your Affiant [Kurtz] felt and removed a digital scale, commonly used by actors engaged in the unlawful dealing of controlled substances, and felt and removed a large sum of U.S. Currency." (Affidavit of Probable Cause, dated 2/24/06, Commonwealth Suppression Hearing exhibit 2). This is the only evidence offered by the Commonwealth to support a plain feel exception to a *Terry* frisk, and it falls short of legal sufficiency.

¶ 13 Our Supreme Court holds quite clearly that "the plain feel doctrine is only

applicable where the officer conducting the frisk feels an object whose mass or contour makes its criminal character immediately apparent. Immediately apparent means that the officer readily perceives, without further exploration or searching, that what he is feeling is contraband." *Pakacki, supra*, at 989. In the present case, there was simply no evidence whatsoever that the objects ultimately removed were immediately apparent as contraband. There is no evidence whatsoever of the size, shape, or hardness of the objects removed.[4] Even the trial court's finding that the scales were "in the right hand pocket" is not supported by the record.[5] The trial court also found that Detective Kurtz would have "doubtlessly encountered such scales on multiple occasions," but the record contains no such fact, neither from live testimony nor from the affidavit. Even if it did, the Commonwealth still has the burden to produce evidence of what the officer conducting the pat down actually perceived during the frisk itself. Without any evidence that the object in Appellant's pocket felt like a weapon or was immediately recognizable as non-threatening contraband, the Commonwealth failed to meet its burden. *See Commonwealth v. Wilson*, 927 A.2d 279, 288 (Pa.Super.2007).

¶ 14 The subsequent canine sniff, warrant, and search of Appellant's car were a result of the discovery of the scale and currency accomplished by the unlawful search and seizure. As such, the drugs that were later seized from Appellant's car were tainted fruits of the unlawful search. We hold that the trial court erred when it failed to suppress the drugs that were seized from Appellant's car subsequent to and flowing from a violation of his constitutional right to be free from an unreasonable search and seizure. *Id.* For these reasons, we vacate the trial court's judgment of sentence and remand for proceedings consistent with this opinion.

¶ 15 Judgment of sentence vacated. Jurisdiction relinquished.

---

4. In addition to the total absence of evidence regarding the tactile nature of the objects, the lack of detail was also demonstrated when Officer Fones was simply asked about the size of the scales seized from Appellant:

Q: [The scales were] something that is three inches long maybe?
A: I forget exactly the size of the scales that were recovered from [Appellant].

Q: Something that would fit in the palm of one's hand? You don't remember?
A: No, I do not.
(N.T. Trial, 10/16/06 at 30).

5. (Trial Court Opinion, at 11). The trial court found that the scales were felt in Appellant's right hand pocket, but no such testimony was given and this information was not included in the Affidavit of Detective Kurtz.