J-S72020-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TIFFANY ROWAN, | : | |
| | : | |
| Appellant | : | No. 379 EDA 2016 |

Appeal from the Judgment of Sentence January 21, 2016
in the Court of Common Pleas of Montgomery County,
Criminal Division at No(s): CP-46-CR-0003672-2014

BEFORE: BENDER, P.J.E., MUSMANNO, J., and STEVENS*, P.J.E.

MEMORANDUM BY MUSMANNO, J.: **FILED MARCH 28, 2018**

Tiffany Rowan ("Rowan") appeals from the judgment of sentence imposed following her conviction of possession of a controlled substance. *See* 35 P.S. § 780-113(a)(16). We vacate the judgment of sentence and remand for further proceedings.

The trial court set forth the relevant underlying facts as follows:

Officer Anthony Space [("Officer Space")] testified that he has approximately seven (7) years of experience in law enforcement. For the last three (3) years, Officer Space has worked as a patrol officer with the Abington Township Police Department. Previously, Officer Space worked as a police officer in patrol for approximately four (4) years in the 22nd District of the Philadelphia Police Department.

Officer Space has specific training and experience with narcotics, has participated in several hundred narcotics arrests, and has completed approximately three hundred (300) hours in advanced car stop training through McLaughlin and other training venues. This training includes instruction in criminal, street-level, and highway interdiction.

_____

* Former Justice specially assigned to the Superior Court.

On September 21, 2013, Officer Space was working the 7:00 p.m. to 7:00 a.m. shift. While on foot patrol in the Glenside section of Abington Township at 2:15 a.m., Officer Space saw a black Pontiac pull into the 7-Eleven parking lot at 362 Easton Road. Four (4) individuals exited the Pontiac and entered the 7-Eleven. After the individuals left the 7-Eleven and reentered the car, Officer Space saw that the car's Pennsylvania inspection sticker had expired the previous year. Officer Space approached on foot and stopped the car. Officer Space explained the reason for the stop to the driver and requested to see his driver's license, registration, and insurance verification.

As the driver was gathering his license, registration, and insurance verification, Officer Space's attention was drawn to the two rear passengers. [Rowan] and a male passenger were displaying excessive signs of nervousness. Specifically, the officer noticed that they were shaking, fidgeting, and breathing heavily. As Officer Space and [Rowan] were looking toward one another, the officer saw [Rowan] move her purse from a position where Officer Space could see it and relocated the purse to the other side of her body and out of his sight.

Based on his experience after hundreds of previous vehicle stops, Officer Space testified that the level of [Rowan's] nervousness was inconsistent with the behavior of the general public and beyond that expected from citizens stopped by the police. Officer Space then asked the driver to bring his license and registration to the rear of the car. The driver complied.

Officer Space asked the driver about the two rear passengers. The driver said he knew the male passenger and that he had just met [Rowan] that evening at the 19th Hole, a dance club on Jenkintown Road. Officer Space asked the driver if there was any contraband in the vehicle. The driver responded: "Not that I know of, but I can't speak for everyone else in the car." Without being asked, the driver then said: "You're welcome to search the car."

After receiving the driver's consent to search the car, Officer Space had the other occupants exit the car. Once [Rowan] exited the car, she appeared even more nervous.

Considering that it was 2:15 a.m., Officer Space was on foot patrol and did not know whether his backup had arrived yet,

there were four (4) passengers and the possibility that there was criminal activity afoot, Officer Space determined that it would be prudent to conduct a safety pat-down of the individuals who had been in the car before searching the car. During his pat-down of [Rowan], Officer Space felt an approximate one (1) inch lump in her right jean pocket. Based on his training and experience, the lump felt to him like narcotics packaging, but he could not say specifically what kind of narcotics.

When Officer Space asked [Rowan] what the lump was, [Rowan] replied that it was money. Officer Space knew this to be false and responded to [Rowan] that it certainly was not money.

At that point, [Rowan] began to back away from the officer. Believing that [Rowan] had lied to him and was now going to try to run away, Officer Space grabbed [Rowan's] arm. [Rowan] then admitted that the lump in her pocket was drugs. Officer Space recovered approximately ten (10) packages of marked and stamped heroin from [Rowan]. Officer Space found no contraband on the other individuals in the vehicle. There was a firearm located on the rear passenger but Officer Space determined that it was legally possessed.

[Rowan filed a Pre-Trial Motion to Suppress.] Following a review of the record and the relevant law, the court denied [Rowan's] Omnibus Pre-Trial Motion to Suppress on January 12, 2016. [Rowan] proceeded to a stipulated bench trial on January 21, 2016, wherein the Commonwealth introduced the transcript of the suppression hearing and the affidavit of probable cause and rested. [Rowan] did not introduce any evidence. Following closing arguments, the court found [Rowan] guilty and imposed [a sentence of two years of probation.] [Rowan] filed a [N]otice of appeal on February 2, 2016. The [trial court] directed [Rowan] to file a Concise Statement of the Matters Complained of on Appeal, pursuant to Pa.R.A.P. 1925(b) ("Statement") by [O]rder dated February 16, 2016. [Rowan] filed her Statement on March 8, 2016.

Trial Court Opinion, 5/31/17, at 2-4 (citations omitted).

On appeal, Rowan raises the following questions for our review:

1. Whether the suppression court erred in determining that the facts and circumstances available to Officer Space at the time

he patted down [Rowan] were sufficient to warrant a reasonable belief that [Rowan] may have been armed and dangerous; … whether the trial court erred in finding that [Rowan] was lawfully seized pursuant to the plain feel doctrine[?]

2. Whether, in denying [Rowan's] Motion to Suppress, the suppression court improperly considered hearsay statements attributed to the driver of the vehicle; and … whether the record supports the suppression court's finding that the driver's hearsay statement "suggested the possibility of contraband in the vehicle or in a passenger's possession[?]"

Brief for Appellant at 8 (some capitalization omitted).

The standard of review for the denial of a motion to suppress evidence is settled:

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

***Commonwealth v. Smith***, 164 A.3d 1255, 1257 (Pa. Super. 2017) (citation and brackets omitted).

- 4 -

In her first claim, Rowan contends that her Motion to Suppress should have been granted. Brief for Appellant at 16, 35. Rowan argues that Officer Space did not have sufficient facts to reasonably believe that Rowan may have been armed and dangerous. *Id.* at 16, 17, 22, 24-25, 27-28, 35. Rowan avers that her alleged nervousness, her movement of her purse, and the driver's statements to Officer Space did not create a viable basis for the pat-down search. *Id.* at 17, 20-21, 22-23, 28-29, 30, 32, 34; *see also id.* at 19, 24, 32 (noting that Rowan was not wearing bulky clothing under which a weapon could be hidden).

Rowan further asserts that the drugs were not lawfully seized pursuant to the plain feel doctrine. *Id.* at 16, 24, 25-26. Rowan claims that Officer Space's testimony that he "couldn't say for sure" what was in Rowan's pocket demonstrated that the plain feel doctrine was inapplicable. *Id.* at 25-27, 29, 35; *see also id.* at 29, 35 (stating that the fact that Officer Space had to ask Rowan what was in her pocket evidenced an admission that he could not immediately identify the object). Rowan argues that because the plain feel doctrine did not apply, her incriminating statement, made after Officer Space had grabbed her, was inadmissible and did not allow for the seizure of the drugs. *Id.* at 26-27, 31.

There are three categories of interactions between police and a citizen evaluated pursuant to Article I, Section 8 of the Pennsylvania Constitution:

> The first of these is a "mere encounter" (or request for information)[,] which need not be supported by any level of

suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention[,]" must be supported by reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

**Commonwealth v. Downey**, 39 A.3d 401, 405 (Pa. Super. 2012) (citation omitted).

When evaluating the legality of investigative detentions, Pennsylvania has adopted the holding of **Terry v. Ohio**, 392 U.S. 1 (1968), noting the following:

[T]he **Terry** "stop and frisk[]" permits a police officer to briefly detain a citizen for investigatory purposes if the officer observes unusual conduct which leads him to reasonably conclude, in light of his experience, that criminal activity may be afoot. **Terry** further held that when an officer is justified in believing that the individual[,] whose suspicious behavior he is investigating at close range[,] is armed and presently dangerous to the officer or to others[,] the officer may conduct a pat[-]down search to determine whether the person is in fact carrying a weapon. The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence.

In order to conduct an investigatory stop, the police must have reasonable suspicion that criminal activity is afoot. In order to determine whether the police had reasonable suspicion, the totality of the circumstances — the whole picture — must be considered. Based upon that whole picture[,] the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity. To conduct a pat[-]down for weapons, a limited search or "frisk" of the suspect, the officer must reasonably believe that his safety or the safety of others is threatened.

*Commonwealth v. Simmons*, 17 A.3d 399, 402-03 (Pa. Super. 2011) (citations, quotation marks, and some paragraph breaks omitted). However, "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or the safety of others was in danger." *Commonwealth v. Taylor*, 771 A.2d 1261, 1268-69 (Pa. 2001). Moreover, in conducting a reasonable suspicion inquiry, a suppression court is required to "afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience[.]" *Commonwealth v. Brown*, 996 A.2d 473, 477 (Pa. 2010).

If weapons are found as a result of the pat-down search, the police officer may seize them. *Commonwealth v. Thompson*, 939 A.2d 371, 376 (Pa. Super. 2007). Additionally, officers may seize nonthreatening contraband "if it is discovered in compliance with the plain feel doctrine[.]" *Id.* Under the plain feel doctrine,

> a police officer may seize non-threatening contraband detected through the officer's sense of touch during a *Terry* frisk if the officer is lawfully in a position to detect the presence of contraband[;] the incriminating nature of the contraband is immediately apparent from its tactile impression[;] and the officer has a lawful right of access to the object.

*Commonwealth v. Wilson*, 927 A.2d 279, 287 (Pa. Super. 2007). "The contraband is immediately apparent when the officer readily perceives, without further exploration or searching, that what he is feeling is contraband." *Commonwealth v. Parker*, 957 A.2d 311, 315 (Pa. Super.

2008) (citation and quotation marks omitted); *see also Commonwealth v. Guillespie*, 745 A.2d 654, 658 (Pa. Super. 2000) (stating that a "*Terry* frisk will only support the seizure of contraband discovered via the officer's plain feel when the incriminating nature of that contraband is immediately apparent to the officer, based solely on the officer's initial pat-down of the suspect's outer garments.") (citation omitted). "If, after feeling the object, the officer lacks probable cause to believe that the object is contraband without conducting some further search, the immediately apparent requirement has not been met and the plain feel doctrine cannot justify the seizure of the object." *Thompson*, 939 A.2d at 376; *see also Commonwealth v. Zahir*, 751 A.2d 1153, 1163 (Pa. 2000) (noting that an officer's subjective belief that an item is contraband is not sufficient unless it is objectively reasonable in light of the facts and circumstances that attended the frisk).

Officer Space testified that on September 21, 2013, at 2:15 a.m., he was on foot patrol in the Glenside section of Abington Township. N.T., 6/10/15, at 6. Officer Space stated that he had observed a black Pontiac, containing four individuals, park in a 7-Eleven parking lot. *Id.* at 7. Officer Space stopped the vehicle after observing that the inspection stickers were expired. *Id.* As Officer Space spoke with the driver of the vehicle, he noticed Rowan and another passenger

> displaying excessive signs of nervousness. They were shaking; there was heavy breathing. Both [the passenger] and [] Rowan

were fidgeting in the backseat. At one point, I observed [] Rowan – I was looking towards her and she was looking towards me, and she took a purse that was in a position where I could see it and relocated it to an area to the other side of her body[.]

*Id.* at 8. Officer Space then asked the driver to exit the vehicle and go to the rear of the vehicle. *Id.* at 9. Officer Space questioned the driver about the rear passengers, who explained that he knew the male passenger, but had just met Rowan at a dance club. *Id.* at 10. Officer Space asked the driver if there was any contraband in the vehicle, to which the driver replied "not that I know of," but that "[y]ou're welcome to search the car." *Id.* at 10-11.

At this point, Officer Space asked the three passengers to exit the vehicle. *Id.* at 11. Because backup had not arrived, Officer Space decided to conduct a safety pat-down search of the individuals, beginning with Rowan. *Id.* Regarding the pat-down search of Rowan, Officer Space testified as follows:

[A.] … I began conducting a pat-down of [] Rowan, and during that pat-down I felt a -- like a lump, a small lump about 1 inch in her right jean pocket.

Q. Officer, when you felt that lump, what did you believe it to be?

A. **I couldn't say for sure**. I mean when I first felt the lump, it felt consistent to me with narcotics packaging, but **I couldn't specifically say what kind**.

I did not go in and retrieve the package. I asked [] Rowan what it was, and she stated to me it was money, and I stated to her very clearly that it was certainly not money. And she began to back away, and I thought she was going to try to run, and I

- 9 -

grabbed her arm.  And she said -- she finally admitted it was drugs.

***

Q. Now, when you patted her down, you said you weren't sure what it was.  It was just a lump; is that correct?

A. I specifically said that I believed from my experience that it was consistent with narcotics packaging.  Exactly what type of narcotics I couldn't say, but at the very least I have a reasonable suspicion to detain her there.

Q. But you couldn't say for sure?  All you saw was the plastic; is that correct?

A. Correct.

***

Q. And you said that when you touched the outside of her pocket, you believed it to be narcotics packaging; is that correct?

A. What I felt was most certainly consistent with narcotics packaging.

*Id.* at 12, 15, 16-17 (emphasis added).

Based on the totality of the circumstances, we conclude that Officer Space articulated sufficient facts from which he could conduct a **Terry** frisk of the occupants of the vehicle.  The driver of the vehicle provided Officer Space with consent to search the vehicle during the stop.  Thus, as Rowan concedes, Officer Space had the authority to order the passengers to exit the vehicle to assure his safety by conducting a **Terry** frisk.  **See Commonwealth v. Reppert**, 814 A.2d 1196, 1202 (Pa. Super. 2002) (*en banc*); **see also Simmons**, 17 A.3d at 403 (noting that "the principles of

- 10 -

**Terry** apply to all occupants of the stopped vehicle, not just the driver."). Thus, based upon the evidence presented, Officer Space was justified in removing the occupants of the vehicle and subjecting Rowan to a **Terry** frisk.

Having concluded Officer Space could conduct a **Terry** frisk, we must determine whether he exceeded the scope of a permissible pat-down. Upon review, it is difficult for us to perceive how the one-inch lump described by Officer Space, in and of itself, and sight unseen, could have a "contour or mass" that was immediately recognizable as a controlled substance. **See Commonwealth v. E.M.**, 735 A.2d 654, 663 (Pa. 1999) (holding that testimony from officer that the bulge in defendant's pocket "may have been contraband" did not meet the "immediately apparent" standard necessary to seize the object pursuant to the plain feel doctrine as the officer "offered no testimony indicating what it was about the mass or contour of this soft bulge which would support a finding that the feeling of the bulge made it immediately apparent to him that the bulge was contraband," or state what type of contraband was in the pocket); **Commonwealth v. Stevenson**, 744 A.2d 1261, 1265-68 (Pa. 2000) (holding that the evidence seized under the plain feel doctrine should be suppressed as the illegal nature of the item in question was not immediately apparent to the officer); **see also Commonwealth v. Thompson**, 985 A.2d 928, 935 (Pa. 2009) (stating that "a court cannot simply conclude that probable cause existed based upon

nothing more than the number of years an officer has spent on the force. Rather, the officer must demonstrate a nexus between his experience and the search, arrest, or seizure of evidence.") (citation omitted).

Further, Officer Space explicitly testified that he did not immediately recognize the incriminating nature of the item in Rowan's pocket, but instead stated that it was "consistent with narcotics packaging." N.T., 6/10/15, at 12, 15, 17. Officer Space's vague and ambiguous testimony regarding "narcotics packaging" is also insufficient to meet the immediately apparent requirement of the plain feel doctrine. *See Stevenson*, 744 A.2d at 1268 (stating that officer's testimony that the cardboard he felt in the defendant's pocket was contraband as he had previously seen drugs packaged in cardboard does not meet the immediately apparent requirement); *id.* (noting that "[t]he mere fact that an officer has seen others use an object to package drugs, however, does not mean that once the officer feels that object during a pat-down search of a different individual, he automatically acquires probable cause to seize the object under the plain feel doctrine as something that is 'immediately apparent' as contraband."); *see also Commonwealth v. Smith*, 685 A.2d 1030, 1034 (Pa. Super. 1996) (holding that the plain feel exception did not apply to contraband recovered during *Terry* frisk when record failed to indicate what it was about the envelope felt by officer that made it immediately apparent to officer that the envelope was contraband); *Commonwealth v. Stackfield*, 651 A.2d 558,

562 (Pa. Super. 1994) (stating that officer's testimony that he felt packaging material or zip-lock baggies did not meet the plain feel doctrine, as a zip-lock baggie is not *per se* contraband and the officer did not articulate whether the contour or mass made it immediately apparent that he was feeling contraband).

However, this does not end our analysis as we must determine whether Officer Space's questioning concerning the contents of Rowan's pocket during the pat-down search, and Rowan's subsequent admission, allowed for the legal seizure of the drugs.  The trial court found that

> [a]fter feeling the lump in [Rowan's] pants' pocket and believing it to be narcotics packaging, based on Officer Space's years of training and experience, Officer Space was justified in questioning [Rowan] about that lump.  After [Rowan] told Officer Space that the lump was money and backing away and blading as if to run when [] Officer [Space] discounted her answer, Officer Space had reasonable suspicion to further detain [Rowan].  [Rowan] then admitted to Officer Space that the lump in her pocket was drugs, and Officer Space had probable cause to arrest.

Trial Court Opinion, 5/31/17, at 18.

We disagree with the trial court's reasoning.  Because the pat-down search failed to establish probable cause to demonstrate Rowan was carrying identifiable contraband, Officer Space had no further cause for suspicion to detain or conduct a search of Rowan based upon the plain feel doctrine.  ***See***

***E.M.***, 735 A.2d at 665 (stating that after "the officer determined that the bulge was not a weapon, and was not contraband, he had no authority to conduct a search because he had no probable cause justifying such a

- 13 -

search.") (citation omitted). Thus, when Officer Space, while feeling the lump during the pat-down search, asked Rowan "what it was," and physically restrained Rowan, we conclude that Rowan was, at that point, subject to a custodial interrogation. *See Commonwealth v. Ingram*, 814 A.2d 264, 270 (Pa. Super. 2002) (stating that "[t]he standard for determining whether an encounter with the police is deemed 'custodial' or police have initiated a custodial interrogation is an objective one based on a totality of the circumstances, with due consideration given to the reasonable impression conveyed to the person interrogated rather than the strictly subjective view of the officers or the person being seized."); *id.* at 270-71 (noting that "[c]ustodial interrogation has been defined as questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his or her freedom of action in any significant way. Interrogation occurs where the police should know that their words or actions are reasonably likely to elicit an incriminating response from the suspect.") (citation, quotation marks, brackets, and emphasis omitted).

Here, Officer Space removed Rowan from the vehicle, subjected her to a pat-down search, and after failing to identify the object in Rowan's pocket, asked Rowan what was in her pocket, prolonging the stop. Under these circumstances, Rowan would have objectively believed that Officer Space had restricted her freedom of action and she was not free to end the

encounter. *See id.* at 271 (stating that appellant would have felt that his freedom of action was restricted where the officer, who, while feeling an object in appellant's pocket during a pat-down search, asked appellant "what is this?"); *see also Commonwealth v. Kemp*, 961 A.2d 1247, 1254 (Pa. Super. 2008) (*en banc*) (stating that "when a person is standing outside rather than inside his vehicle, he is less likely to believe that he can actually leave the area by entering the car and driving away."). Further, Officer Space's question constituted an interrogation, as it was likely to elicit an incriminating response. *See Ingram*, 814 A.2d at 271 (stating that an officer's question during pat-down search as to an object in the appellant's pocket was an interrogation). Moreover, prior to Rowan's admission as to the contents of her pocket, Officer Space had grabbed her by the arm. Accordingly, a custodial interrogation occurred, requiring the administration of *Miranda*[1] warnings. Because Rowan was not provided *Miranda* warnings, her incriminating statement, and the drugs recovered from her pocket based upon the statement, should have been suppressed. *See id.* (stating that "[b]ecause [a]ppellant was not given *Miranda* warnings, [a]ppellant's admission, and the contraband recovered based on that invalid admission, should have been suppressed."); *see also Commonwealth v. Wood*, 833 A.2d 740, 746 (Pa. Super. 2003) (*en banc*) (concluding that the

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

- 15 -

defendant's incriminating statement, which was made only after she had been detained without reasonable suspicion, was illegally obtained).

Based upon the foregoing, the trial court abused its discretion in failing to suppress the drugs seized from Rowan.[2]

Judgment of sentence vacated. Case remanded for further proceedings. Jurisdiction relinquished.

President Judge Emeritus Bender joins the memorandum.

President Judge Emeritus Stevens files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/28/18

---

[2] Based upon our disposition of Rowan's first claim, we need not address her second claim.