COMMONWEALTH of Pennsylvania,
Appellee

v.

Eric Len INGRAM, a/k/a Richard
Spence, Derrick Ingram,
Appellant

Superior Court of Pennsylvania.

Submitted Aug. 5, 2002.
Filed Dec. 20, 2002.

266

John Ciroli, Public Defender, Pittsburgh, for appellant.

Michael W. Streily, Deputy Dist. Atty., Pittsburgh, for Com.

Before: DEL SOLE, P.J., GRACI and MONTEMURO,* JJ.

DEL SOLE, P.J.:

¶ 1 Ingram appeals from the judgment of sentence following his conviction of two violations of the Uniform Firearms Act, one count of possession of a controlled substance and one count of possession of a weapon on school property. Upon review, we affirm in part and reverse in part.

¶ 2 The trial court summarized the procedural history of this case as follows:

The defendant was charged with two (2) violations of the Uniform Firearms Act: Persons not to Possess Firearms (18 Pa.C.S.A. § 6105) and Firearms not to be Carried Without a License (18 Pa. C.S.A. § 6106), two (2) violations of the Controlled Substance, Drug, Device and Cosmetic Act: Possession of a Controlled Substance (35 P.S. § 780–

* Retired Justice assigned to the Superior Court.

113(a)(16)) and Possession with Intent to Deliver (35 P.S. § 780–113(a)(3)) and with one (1) count of Possession of a Weapon on School Property (18 Pa. C.S.A. § 912). Because he was not brought to trial within 180 days, he was released on an OR bond on December 1, 2000 and a trial date was set for April 30, 2001.

A suppression hearing was held before this Court on April 30, 2001. At the conclusion of the hearing the defendant's suppression motion was denied....

... A stipulated non-jury trial was held before this Court on October 23 at which time the Possession with Intent to Deliver charge was withdrawn by the Commonwealth. After presentation of additional evidence by the Commonwealth, the defendant was found guilty [of] the remaining charges. He was immediately sentenced to a term of imprisonment of two and one half (2½) to five (5) years. This timely appeal followed.

Trial Court Opinion, 4/8/02, at 1–2.

¶ 3 On appeal, Appellant presents the following issues for review:

I. Did the trial court err in denying the defense motion to suppress where the officers conducted a search of Mr. Ingram in violation of his right against unreasonable searches and seizures and more invasive than the Constitutions of both the United States and this Commonwealth allow, thereby making all evidence resulting from that search, including all statements purportedly made, to be fruits of an illegal search?
II. Did the Commonwealth present sufficient evidence to establish Mr. Ingram's guilt beyond a reasonable doubt of possession of a weapon on school property?

Appellant's Brief at 4.

¶ 4 Appellant first argues that the search of his person was illegal because there were no specific, articulable facts to justify a search for weapons for the officer's safety, and because the officer did not observe suspicious conduct on the party of Mr. Ingram. Appellant's Brief at 10. Accordingly, Appellant argues that the search was illegal and the fruits of that search should have been suppressed by the trial court. *Id.* Furthermore, Appellant maintains that even if the search is deemed a lawful *Terry* stop and search, the discovery of the contraband on him should have been suppressed as it was not immediately apparent as such upon tactile impression by the officer. *Id.* at 14.

¶ 5 Again we refer to the finding made by the trial court regarding the circumstances of this stop and search in order to address this issue. The trial court recapped the circumstances of the stop and search as follows:

The defendant was initially searched by Officer Michael Magerl during the investigation of an unauthorized use of a motor vehicle complaint. The complainant in that case, Dwight Hill, called the Clairton Police Department and indicated that the defendant was in possession of his car which had been stolen several weeks earlier. He described the defendant and identified his location. He also stated that he observed a gun in the defendant's possession. Officer Magerl responded to the complaint and found the defendant to be in substantially the same place and wearing the same garments as Mr. Hill reported. At that time, Officer Magerl conducted a protective pat-down of the defendant out of concern for his own safety and the safety of the other responding officers. Officer Magerl had been threatened previously by the defendant during an arrest and had reason to believe that the defen-

dant was armed at the time of the search.

Officer Magerl began the pat-down by checking the defendant's front pants' pocket. He felt an object in the defendant's front left pocket. Officer Magerl asked what the item was and the defendant responded that it was "chronic," which Officer Magerl knew to be a term for marijuana. Officer Magerl removed the object and, finding it to be marijuana, handcuffed the defendant and placed him under arrest. He then continued to search the defendant incident to the arrest. As a result of that search he found seventeen (17) bags of marijuana in his coat pocket and a 9mm semi-automatic gun in the waistband of his pants.

Trial Court Opinion, 4/08/02, at 2–3.

¶ 6 Initially, we note our standard of review of the denial of a suppression motion. When reviewing an order denying a motion to suppress evidence, we must determine whether the factual findings of the trial court are supported by the evidence of record. *Commonwealth v. Jackson*, 451 Pa.Super. 129, 678 A.2d 798, 800 (1996). In making this determination, this Court may only consider the evidence of the Commonwealth's witnesses, and so much of the evidence for the defendant, as fairly read in the context of the record as a whole, as remains uncontradicted. *Jackson*, 678 A.2d at 800. If the evidence supports the findings of the trial court, we are bound by such findings and may reverse only if the legal conclusions drawn therefrom are erroneous. *Commonwealth v. Fitzpatrick*, 446 Pa.Super. 87, 666 A.2d 323, 325 (1995).

¶ 7 In the first part of our analysis, we must focus on whether Officer Magerl had the reasonable suspicion necessary to subject Appellant to an investigatory stop and frisk. We find that he did.

¶ 8 Recently, in *Commonwealth v. E.M.*, 558 Pa. 16, 735 A.2d 654 (1999), our Supreme Court revisited and summarized the jurisprudence surrounding the "investigatory stop and frisk" as follows:

It is well established that a police officer may conduct a brief investigatory stop of an individual if the officer observes unusual conduct which leads him to reasonably conclude, in light of his experience, that criminal activity may be afoot. An investigatory stop subjects a person to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Such an investigatory stop is justified only if the detaining officer can point to specific and articulable facts which, in conjunction with rational inference derived from those facts, give rise to a reasonable suspicion of criminal activity and therefore warrant the intrusion.

If, during the course of a valid investigatory stop, an officer observes unusual and suspicious conduct on the part of the individual which leads him to reasonably believe that the suspect may be armed and dangerous, the officer may conduct a pat-down of the suspect's outer garments for weapons. In order to justify a frisk under *Terry*, the officer "must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." Such a frisk, permitted without a warrant and on the basis of reasonable suspicion less than probable cause, must always be strictly "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby."

*Commonwealth v. E.M.*, 558 Pa. 16, 735 A.2d 654, 659 (1999) (citations omitted).

¶ 9 We find that there were, in fact, articulable facts to support a reasonable suspicion to justify a *Terry* stop and frisk of Appellant. Here, the complainant, Dwight Hill, called the Clairton Police Department and, identifying himself, indicated that Appellant was in possession of his car which had been stolen several weeks earlier. Hill described Appellant and identified his location. Hill also stated that he observed a gun in Appellant's possession. Officer Magerl responded to the complaint and found Appellant to be in substantially the same place and wearing the same garments as described by Hill. Based on the accuracy of that information, Officer Magerl had reason to believe that Hill's additional statement that Appellant possessed a gun was also credible. Furthermore, Magerl had been threatened by Appellant during a previous arrest.

¶ 10 Under the totality of the circumstances, we find that Officer Magerl was justified in believing that criminal activity was afoot and was, therefore, justified in conducting an investigatory stop. Moreover, we also find that the circumstances were sufficiently dangerous to warrant a pat-down frisk for weapons.

¶ 11 Having found that an investigative stop and a protective frisk were justified, we must now determine whether the frisk was properly conducted. In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court clearly held that a frisk effectuated for the safety of an officer must be strictly "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." *Terry,* 392 U.S. at 26, 88 S.Ct. 1868.

¶ 12 Appellant maintains that *Commonwealth v. Spears,* 743 A.2d 512 (Pa.Super.1999), is the controlling case on this issue. Appellant's Brief at 14. *Spears* stands for the proposition that a *Terry* stop and frisk is limited to a frisk for concealed weapons and the seizure of non-threatening contraband is further limited to only those items immediately apparent as such upon tactile impression. *Id.*

¶ 13 This situation, however, is not one in which the Officer manipulated the object in an attempt to identify it. Instead, the Officer, while touching the object located in Appellant's pants pocket asked the Appellant "what is this?" At that point, Appellant responded, identifying the object, and Officer Magerl then seized the object. The trial court concluded that the Appellant volunteered this information and because the admission and contraband were voluntarily provided to the Officer, the statement and resulting seizure was not illegal.

¶ 14 The standard for determining whether an encounter with the police is deemed "custodial" or police have initiated a custodial interrogation is an objective one based on a totality of the circumstances, with due consideration given to the reasonable impression conveyed to the person interrogated rather than the strictly subjective view of the officers or the person being seized. *Commonwealth v. Gwynn,* 555 Pa. 86, 723 A.2d 143, 148 (1998). Pennsylvania's test for custodial interrogation is:

> whether the suspect is physically deprived of his freedom in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by said interrogation . . . .

*Commonwealth v. Gonzalez,* 519 Pa. 116, 546 A.2d 26, 29 (1988). Custodial interrogation does not require that the police make a formal arrest, nor that the police intend to make an arrest. *Commonwealth v. Meyer,* 488 Pa. 297, 412 A.2d 517, 521 (1980). Rather, the test of custodial inter-

rogation is "whether the individual being interrogated reasonably believes his freedom of action is being restricted." *Meyer*, 412 A.2d at 521. *Miranda* warnings are required where a suspect is subject to custodial interrogation. *Commonwealth v. Ford*, 539 Pa. 85, 650 A.2d 433, 438 (1994). Custodial interrogation has been defined as "questioning *initiated* by law enforcement officers after a person has been taken into custody or otherwise deprived of his [or her] freedom of action in any significant way." *Commonwealth v. Hoffman*, 403 Pa.Super. 530, 589 A.2d 737, 744 (1991). Interrogation occurs where the police should know that their words or actions are reasonably likely to elicit an incriminating response from the suspect. *Commonwealth v. Hughes*, 536 Pa. 355, 639 A.2d 763, 771 (1994). An inculpatory statement which is not made in response to police interrogation, then, "is classified as a volunteered statement, gratuitous and not subject to suppression for lack of warnings." *Hoffman*, 589 A.2d at 745.

¶ 15 Evidence of record reveals that three police vehicles arrived at Appellant's location following the complaint made by Hill. Two officers approached Appellant and asked to speak to him regarding the unauthorized use of a vehicle and Appellant was informed that one of the officers would need to conduct a pat-down prior to the discussion. Officer Magerl's Affidavit of Probable Cause indicates that Appellant complied with the Officer's order to place his hands on the vehicle and spread his legs for the pat-down. It was at this point that Officer Magerl located an object in Appellant's left front pants pocket and questioned Appellant about the object. Appellant indicated that it was "chronic," a street name for marijuana. Officer Magerl retrieved the object from Appellant's pocket, verifying that it was marijuana.

¶ 16 Given these circumstances, Appellant could reasonably believe that his freedom of action was restricted. Accordingly, we find that for purposes of our analysis, Appellant was at that point within the custody of the police officers.

¶ 17 Additionally, Officer Magerl's question to Appellant regarding the object in his pants pocket was indeed an interrogation. Officer Magerl should have known that his question was reasonably likely to elicit an incriminating response from Appellant. *See Commonwealth v. Hughes*, 536 Pa. 355, 639 A.2d 763, 771 (1994). We disagree with the trial court's conclusion that Appellant's statement was voluntary. Appellant's statement was made in response to Officer Magerl's direct question regarding the object in Appellant's pants pocket. *See Hoffman*, 403 Pa.Super. 530, 589 A.2d 737. Prior to this custodial interrogation, Appellant should have been given *Miranda* [1] warnings. Because Appellant was not given *Miranda* warnings, Appellant's admission, and the contraband recovered based on that invalid admission, should have been suppressed.

¶ 18 This finding, however, does not end our review of this issue. The Commonwealth raises the doctrine of inevitable discovery and argues that the failure to give the *Miranda* warning is irrelevant because, pursuant to the lawful *Terry* frisk, the officer would have discovered the gun in Appellant's waistband. Appellee's Brief at 16–17. Appellant would have been arrested for the firearms violation and then a search incident to arrest would have been conducted. *Id.* At that point the officer would have discovered the marijuana.

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

¶ 19 When the scope of a *Terry* search is exceeded, this alone does not automatically exclude the evidence seized from the illegal search. The United States Supreme Court in *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984) stated:

> It is clear that the cases implementing the exclusionary rule "begin with the premise that the challenged evidence is in some sense the product of illegal government activity." *United States v. Crews,* 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980) (emphasis added). Of course, this does not end the inquiry. If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means—here the volunteers' search— then the deterrence rationale has so little basis that the evidence should be received. Anything less would reject logic, experience, and common sense.

*Hoffman,* 589 A.2d at 743 (citing *Nix v. Williams,* 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984)). Our Pennsylvania courts have also recognized the inevitable discovery doctrine. In *Commonwealth v. Garvin,* 448 Pa. 258, 293 A.2d 33 (1972), our Supreme Court held evidence which would have been discovered was sufficiently purged of the original illegality to allow admission of the evidence. *Hoffman,* 589 A.2d at 743. The burden of proving such inevitable discovery rests with the prosecution. *Id.*

¶ 20 Here, Appellant was arrested after Officer Magerl located the marijuana in Appellant's pocket after asking Appellant about the object. Although Officer Magerl was not justified to interrogate Appellant without first giving Appellant *Miranda* warnings, a search of Appellant's person would have been conducted after Officer Magerl located the gun in Appellant's waistband. Appellant had no license to carry the gun and was not permitted to carry a gun due to a prior conviction. Thus, this discovery would have resulted in a lawful arrest of Appellant and a search of Appellant's person incident to the arrest would have produced the drugs obtained. It is well established that a warrantless search incident to a lawful arrest is *reasonable,* and no justification other than that required for the arrest itself is necessary to conduct such a search. *Commonwealth v. Williams,* 390 Pa.Super. 493, 568 A.2d 1281, 1283 (1990). Stated another way, in all cases of lawful arrests, police may fully search the person incident to the arrest. *Williams,* 568 A.2d at 1283. Consequently, any evidence seized as a result of a search incident to a lawful arrest is admissible in later proceedings. *Id.*

¶ 21 Upon review of the record, it was established by a preponderance of the evidence that the evidence in question would have been inevitably discovered when Officer Magerl conducted a full search incident to the lawful arrest. *See Hoffman,* 403 Pa.Super. 530, 589 A.2d 737. Accordingly, we find that Appellant's motion to suppress was properly denied.

¶ 22 In his second issue, Appellant maintains that the Commonwealth did not present evidence sufficient to establish beyond a reasonable doubt that he possessed a weapon on school property. Appellant's Brief at 16. Appellant asserts that he was not on school grounds, but rather, that he was located at least one block away from the school campus when he was stopped by the police. *Id.,* at 17.

¶ 23 In reviewing a sufficiency of the evidence claim, the test we apply is whether the evidence, and all reasonable inferences taken from the evidence, viewed in the light most favorable to the Commonwealth as verdict-winner, were sufficient to establish all the elements of the offense

beyond a reasonable doubt. *Commonwealth v. Williams,* 554 Pa. 1, 720 A.2d 679, 682 (1998) (citation omitted).

¶ 24 Appellant was convicted of possession of a weapon on school property, pursuant to 18 Pa.C.S.A. § 912, which provides in relevant part:

§ 912. Possession of weapon on school property

    (a) Definition.—Notwithstanding the definition of "weapon" in section 907 (relating to possessing instruments of crime), "weapon" for purposes of this section shall include but not be limited to any knife, cutting instrument, cutting tool, nunchuck stick, firearm, shot-gun, rifle and any other tool, instrument or implement capable of inflicting serious bodily injury.

    (b) Offense defined.—A person commits a misdemeanor of the first degree if he possesses a weapon in the buildings of, on the grounds of, or in any conveyance providing transportation to or from any elementary or secondary publicly-funded educational institution, any elementary or secondary private school licensed by the Department of Education or any elementary or secondary parochial school.

18 Pa.C.S.A. § 912.

¶ 25 At trial, the parties stipulated to the fact that the Clairton Education Center is a school housing students from kindergarten through twelfth grade. The parties also stipulated that the street on which Appellant was stopped was an access road to the main entrance to the school, which during school hours is turned into a one-way street to allow ingress and egress to the facility.

¶ 26 Despite the stipulation by both parties, we cannot conclude beyond a reasonable doubt that Appellant was on school property when he was stopped and found to be carrying a gun. There is no evidence of record regarding ownership of the road. Additionally, there is no evidence that the access road provides access only to the school center and not any other establishments. The parties stipulated that during school hours, the access road is turned into a one way street allowing for ingress or egress from the school. That fact does not, in and of itself, dictate that the road provides access only to the school and not to other establishments. The conversion of the road to a one-way street may be done solely for convenience of individuals trying to reach the education center. Because the Commonwealth failed to establish beyond a reasonable doubt that Appellant was on school property when he was found to be in possession of the weapon, we find there was insufficient evidence to convict him of this crime. Accordingly, we reverse the trial court's decision regarding this conviction and vacate the corresponding judgment of sentence.[2]

¶ 27 Judgment of sentence affirmed in part and reversed and vacated in part. Jurisdiction relinquished.

---

**2.** We note that while we are vacating the judgment of sentence for this conviction, according to the Guideline Sentencing Form no additional penalty was imposed on the basis of this conviction. Thus, despite the fact that this sentence of judgment is vacated, Appellant's sentence is unaffected.