J-S53005-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DEVIN NATHANIEL BYES-SANDERS, | : | |
| | : | |
| Appellant | : | No. 1544 WDA 2013 |

Appeal from the Judgment of Sentence August 29, 2013,
Court of Common Pleas, Erie County,
Criminal Division at No. CP-25-CR-00002258-2012

BEFORE:  DONOHUE, OLSON and PLATT*, JJ.

MEMORANDUM BY DONOHUE, J.:               **FILED AUGUST 21, 2014**

Devin Nathaniel Byes-Sanders ("Byes-Sanders") appeals from the August 29, 2013 judgment of sentence entered by the Erie County Court of Common Pleas.  Specifically, Byes-Sanders challenges the trial court's denial of his motion to suppress.  Upon review, we affirm.

The trial court summarized the testimony from the suppression hearing as follows:

> The Commonwealth presented the testimony of Lieutenant Michael Nolan, City of Erie Police. Nolan has been with the City of Erie Police for twenty (20) years and the lieutenant in charge of the Drug and Vice Unit for approximately ten (10) years.
>
> On March 8, 2012, a search warrant for evidence of drug dealing was obtained for the residence of Ernesto Perez Jefferson and his wife, Jessica Perez, at 829 West Tenth Street, Erie, Pennsylvania.

*Retired Senior Judge assigned to the Superior Court.

The search warrant on the Perez residence was executed the same day. Approximately five ounces of cocaine and $15,000.00 in cash were recovered from Perez's residence. Ernesto Perez was arrested and transported to the police station where he agreed to speak with Nolan and Detective Fisher.

Perez confessed to Nolan the $15,000.00 represented proceeds from drug sales. He told the police the cocaine belonged to him and was for sale.

Perez agreed to cooperate with the police by completing a drug deal that was to occur later that day with his supplier. Perez told Nolan his supplier was Jarron Jackson. Perez told Nolan a person named 'Dev' was Jackson's middleman for the delivery of the drugs. Perez told Nolan he never met Jackson and his only contacts with him were by telephone. Perez told Nolan he previously met with 'Dev' in his capacity as the runner for Jackson.

Perez told Nolan the $15,000.00 seized from his residence earlier in the day was to be paid to Jackson through 'Dev' for a half-kilo of cocaine that was due for delivery later that day. Nolan testified the $15,000.00 was bundled in thousand dollar quantities, folded over and rubber-banded, which was typical of drug transactions involving large sums of money.

Perez related the drug deal would include a telephone call between Perez and Jackson to coordinate payment and delivery of the drugs. Perez told Nolan this was typical for drug transactions with Jackson.

Perez described for Nolan other typical features of drug transactions involving Jackson and 'Dev'. The majority of the drug transactions occurred at Perez's residence on 10th Street. 'Dev' typically arrived in a black Expedition SUV with a loud, thumping stereo. 'Dev' typically came to the back door of Perez's residence. Perez normally paid 'Dev' in cash.

Perez described 'Dev' as a tall, thin, black male in his twenties with dreadlocks.

Perez advised that 'Dev' and Jackson changed their phone numbers every couple of weeks. Perez gave Nolan the most recent telephone number he had for 'Dev'.

Nolan testified Jackson was a well-known dealer of cocaine and crack cocaine.

Nolan researched Jackson's associates on the Erie Police Department records management system. In doing so, he came across [Byes-Sanders'] name as a known associate of Jackson.

At the police station and in Nolan's presence, Perez received a phone call from Jackson. Perez and Jackson discussed an imminent drug deal. Nolan assembled a team and returned to Perez's residence at approximately 5:30 p.m.

While Perez remained behind at the police station, Perez had multiple phone conversations with Jackson and 'Dev' concerning the drug transaction that was to occur. Detective Fisher relayed information about the calls to Nolan via two-way radio.

At 7:10 p.m., while Nolan was waiting at Perez's residence with the team of officers, a black Expedition SUV pulled up and parked outside Perez's residence. Within a few seconds, Nolan received contact from Detective Fisher that Perez had just received either a phone call or text message from 'Dev' saying, 'I'm here.' From inside Perez's residence, Nolan observed [Byes-Sanders] exit the black Expedition and walk toward the residence. Nolan determined that [Byes-Sanders] matched the Perez's [*sic*] description of 'Dev'. Nolan determined [Byes-Sanders'] vehicle matched Perez's description of 'Dev's' vehicle. [Byes-Sanders] was alone. [Byes-Sanders] walked to the back door of Perez's

residence. [Byes-Sanders] knocked or rang the door bell [*sic*].

Nolan waited approximately 20 seconds and opened the door. Nolan and the two officers inside Perez's residence had their weapons drawn. [Byes-Sanders] was ordered to show his hands and get down. From the officer's perspective, [Byes-Sanders] was under arrest at this time. [Byes-Sanders] did not comply, but took steps backwards. Nolan reached out and restrained [Byes-Sanders] by the arm.

While restraining [Byes-Sanders], Nolan felt a very hard bulge in the left sleeve of [Byes-Sanders'] coat. Nolan placed [Byes-Sanders] on the ground and retrieved from [Byes-Sanders'] left sleeve multiple bags of compressed cocaine. Recovered from [Byes-Sanders'] pocket was a large quantity of eight balls of crack cocaine, bagged individually and contained within a larger bag.

Perez identified [Byes-Sanders] as 'Dev' at the Erie Police station after [Byes-Sanders'] arrest.

Trial Court Opinion, 10/24/13, at 2-5 (record citations and footnote omitted).

Byes-Sanders filed a motion to suppress asserting, *inter alia*, that the police obtained the evidence by virtue of an arrest made without probable cause. The trial court held a hearing on January 7, 2013, and denied the motion on February 28, 2013.

The case proceeded to a bench trial on June 25, 2013, and the trial court convicted him of possession of a controlled substance, possession of a controlled substance with intent to deliver, and possession of drug

paraphernalia.[1]  On August 29, 2013, the trial court sentenced Byes-Sanders to an aggregate term of 48 to 96 months of incarceration followed by six months of probation.

Byes-Sanders filed a timely notice of appeal.  He raises one issue for our review:

> Whether or not the lower court erred in holding that the City of Erie vice unit had probable cause to arrest [Byes-Sanders] on March 8, 2012 when [Byes-Sanders] approached the residence at 829 West 10th Street, Erie, Pennsylvania at approximately 7:10 p.m. in a black Expedition, and after knocking at the door was greeted with three guns in his face by Erie City Police Officers and was forcibly pulled into the residence by Lieutenant Nolan, at which time Lieutenant Nolan felt a hard object in [Byes-Sanders'] coat sleeve, and removed the object pursuant to a search of [Byes-Sanders] incident to his arrest?

Byes-Sanders' Brief at 3.

"Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct."  ***Commonwealth v. Thompson***, 93 A.3d 478, 484 (Pa. Super. 2014) (citation omitted).  We are not bound by the trial court's legal conclusions, but must apply the law to the supported facts found by the trial court.  ***Id.***  The trial court's conclusions of law are subject to our plenary review.  ***Id.***

---

[1]  35 P.S. § 780-113(a)(16), (30), (32).

The trial court found that the police had probable cause to arrest Byes-Sanders for possession of a controlled substance with intent to deliver, a felony, when he arrived at Perez Jefferson's house. Trial Court Opinion, 10/24/13, at 6. It reached this conclusion based upon the following testimony provided by Lieutenant Nolan:

- Perez Jefferson was a known drug dealer;

- police recovered five ounces of cocaine and $15,000 from Perez Jefferson, which money he stated was to be used in a cocaine purchase later that day with an intermediary known as "Dev";

- the money was bundled in a way that Lieutenant Nolan knew to be consistent with drug transactions; $15,000 was the appropriate cost for the amount of drugs Perez Jefferson was to purchase;

- Perez Jefferson received a call from Jackson while at the police station that the drug deal was "imminent";

- Byes-Sanders arrived at Perez Jefferson's house in the vehicle Perez Jefferson described as belonging to "Dev";

- within seconds of Byes-Sanders arriving at the house, "Dev" communicated with Perez Jefferson saying "I'm here";

- Byes-Sanders fit the description of "Dev" provided by Perez Jefferson; and

- Byes-Sanders came to the back door of the house to effectuate the drug transaction, as Perez Jefferson said he would.

*Id.* at 6-7. Pursuant to its conclusion that the search was incident to Byes-Sanders' proper arrest, the trial court found that suppression was not warranted.

Byes-Sanders asserts that this was insufficient to give rise to a finding of probable cause to arrest him because (1) Lieutenant Nolan testified that he was not certain that it was "Dev" at the door; (2) Perez Jefferson said "Dev" would arrive with the stereo "thumping," and Lieutenant did not know if that was the case when Byes-Sanders arrived; and (3) Byes-Sanders did not have anything to carry the ½ kilo of cocaine, all of which distinguish this case from **Commonwealth v. Guzman**, 612 A.2d 524 (Pa. Super. 1992), *abrogated on other grounds by* **Commonwealth v. Bell**, 645 A.2d 211 (Pa. 1994). Byes-Sanders' Brief at 13-14.

Police are empowered to arrest a suspect without a warrant, *inter alia*, if the officer has probable cause that the suspect has committed a felony. Pa.R.Crim.P. 502(2)(b).

> Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require only a probability, and not a prima facie showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

**Commonwealth v. Thompson**, 985 A.2d 928, 931 (Pa. 2009) (internal citations, quotations, and emphasis omitted).

> [A] warrantless search incident to a lawful arrest is reasonable, and no justification other than that

- 7 -

> required for the arrest itself is necessary to conduct such a search. Stated another way, in all cases of lawful arrests, police may fully search the person incident to the arrest. Consequently, any evidence seized as a result of a search incident to a lawful arrest is admissible in later proceedings.

*Commonwealth v. Ingram*, 814 A.2d 264, 272 (Pa. Super. 2002) (internal citations and emphasis omitted).

In *Guzman*, the police discovered cocaine while executing a search warrant at an apartment. Upon his arrest, the apartment's resident arranged for the delivery of two kilos of cocaine to his apartment, and described the person who would be coming to the apartment and the vehicle in which he would arrive. *Guzman*, 612 A.2d at 525.

The defendant came to the apartment in the described vehicle and he physically matched the description provided. He was also carrying a satchel large enough to carry two kilos of cocaine. When the defendant knocked on the apartment door, police arrested him immediately, searched the satchel and unwrapped the packages contained therein, revealing over two kilos of cocaine. *Id.*

Based upon the totality of the circumstances, including that the defendant arrived in the vehicle described, matched the description provided, and was carrying a bag large enough to carry the amount of cocaine expected, this Court affirmed the trial court's denial of the

defendant's motion to suppress, as there was probable cause to support his warrantless arrest. *Id.* at 526.

Turning to the case at bar, we are unmoved by the points made by Byes-Sanders in an attempt to distinguish this case from *Guzman*. First, we note that Byes-Sanders' claim that Lieutenant Nolan was not certain that the person at the door was "Dev" is inaccurate. Rather, the record reflects that Lieutenant Nolan testified that when Byes-Sanders came to the door he was unsure that it was in fact *Byes-Sanders*. N.T., 1/7/13, at 32. Lieutenant Nolan never expressed any doubt that the person knocking on the door was "Dev," whom he knew would be bringing ½ kilo of cocaine. It is irrelevant for probable cause purposes whether the police knew the specific identity of the individual who brought the cocaine prior to effectuating the arrest – probable cause to arrest is based upon knowledge that the person at the door, regardless of his name, is committing a crime. *Thompson*, 985 A.2d at 931.

Furthermore, Lieutenant Nolan's inability to recall whether the stereo was "thumping" when Byes-Sanders arrived as Perez Jefferson said was the case with "Dev" in the past and the absence of a satchel or bag to carry the cocaine does not negate a finding of probable cause. The record reflects that police recovered $15,000 during the search of the home of Perez Jefferson, a known drug dealer, which was bundled in a manner consistent with drug purchases. N.T., 1/7/13, at 6, 12-13. Perez Jefferson stated that

the money was going to be used to purchase ½ kilo of cocaine, which would be brought to his house later that day by an intermediary known as "Dev." *Id.* at 9, 11, 12. The street value of ½ kilo of cocaine is approximately $15,000. *Id.* at 15. He received a call while at the police station, indicating that the drug transaction was "imminent." *Id.* at 19, 20, 23. Byes-Sanders arrived at the house in the vehicle described, matched the description provided, and went to the back door of the house, as Perez Jefferson said he would. *Id.* at 13-14, 15, 28, 29. At the same time Byes-Sanders arrived at the house, Perez Jefferson received a communication from "Dev" which said, "I'm here." *Id.* at 29.

Applying the totality of the circumstances test, we agree with the trial court that the evidence presented supported Lieutenant Nolan's belief that Byes-Sanders was committing a felony, *to wit*, possession of a controlled substance with intent to deliver. *See Thompson*, 985 A.2d at 931. Thus, the cocaine discovered on Byes-Sanders' person, recovered during the search incident to his arrest, was properly admitted. *See Ingram*, 814 A.2d at 272.

The record supports the trial court's findings of fact and the legal conclusions drawn therefrom are correct. *See Thompson*, 93 A.3d at 484. We therefore affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/21/2014</u>