J-S47025-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| MATTHEW NICHOLAS DE LA ROSA | |
| Appellee | No. 2063 MDA 2015 |

Appeal from the Order Entered October 26, 2015
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0002218-2015

BEFORE: SHOGAN, J., LAZARUS, J., and JENKINS, J.

DISSENTING MEMORANDUM BY LAZARUS, J.: **FILED SEPTEMBER 14, 2016**

Because I believe that Officer Cilento subjected De La Rosa to an unconstitutional detention after the initial, lawful traffic stop[1] and pat-down,[2] I respectfully dissent. In my opinion, when Officer Cilento continued his questioning and asked De La Rosa if he had anything else on his person, an

_____

[1] Neither party contests that the initial traffic stop was lawful; the stop was based upon probable cause since an officer observed the driver of the vehicle run a stop sign. We also note that once a motor vehicle has been lawfully stopped for a traffic violation, police officers do not violate the Fourth Amendment by ordering the occupants to get out of the vehicle.

[2] Notably, the pat-down did not produce any weapons. **See Terry v. Ohio**, 392 U.S. 1, 26 (1968) (sole justification for **Terry** search is the protection of the police and others nearby and search must be strictly "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby."). Therefore, any fear that Officer Cilento had for his safety should have been dispelled when no weapon was discovered.

individual would not objectively believe that he was free to end the encounter and refuse to answer the officer's questions. Accordingly, I would find that at that point the detention had evolved into a constitutional seizure requiring the administration of **Miranda**[3] warnings. Because De La Rosa was not **Mirandized** at this point, the court properly suppressed the evidence from the traffic stop. Therefore, I would affirm.

The majority reasons that the strong odor of burnt marijuana initially detected by the officers justified an investigatory stop and that Officer Cilento was permitted to inquire "as to whether [De La Rosa] had any additional information the officer should know." Majority Opinion, at 10. While the majority correctly states the requisite level of suspicion to conduct an investigatory detention, it is incorrect in concluding that the further detention in the instant case was permissible.

Here, nothing happened *after* the conclusion of the initial stop and pat-down (that uncovered no weapons or immediately apparent incriminating contraband) to give the officer further cause for suspicion. **Compare Commonwealth v. Pakacki**, 901 A.2d 983 (Pa. 2006) (where officer smelled marijuana emanating from defendant and then during pat-down felt object immediately apparent to experienced officer as marijuana pipe, seizure of pipe legal under plain feel doctrine). Therefore, Officer Cilento's

---

[3] **Miranda v. Arizona**, 384 U.S. 436 (1966).

further questioning of De La Rosa without **Miranda** warnings as to whether "he had anything else on his person" served to objectively prevent De La Rosa from feeling like he was free to leave. As a result, any perceived consent to search his front right pant pocket was also invalid.

The validity of a new stop arising from an initial traffic violation is based on the following query:

> [I]n the context of a traffic or similar stop, once the purpose for the stop has been completed, the question arises: Does the individual have objective reasons to believe that he is (or is not) free to end the police/citizen encounter?

**Commonwealth v. Strickler**, 757 A.2d 884, 891 (Pa. 2000). While traffic stops in Pennsylvania are generally investigative, they may escalate to custodial detentions when coercive conditions "comparable to arrest" are present. **Commonwealth v. Mannion**, 725 A.2d 196, 202 (Pa. Super. 1999). The Pennsylvania Supreme Court further stated in **Strickler**:

> In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained. In making this determination, courts must apply the totality-of-the-circumstances approach, with no single factor dictating the ultimate conclusion as to whether a seizure has occurred.

**Strickler**, 757 A.2d at 890.

Under the totality-of-the-circumstances approach, it is clear from the record that the subsequent questioning of De La Rosa following the uneventful pat-down constituted interrogation. While the officers in this case did not physically restrain De La Rosa, their show of authority (fully uniformed, sirens blaring) certainly would indicate to a reasonable person

- 3 -

that he or she was not free to leave the scene. Moreover, although traffic stops are often considered investigative "since [they are] normally brief and in public view," *Mannion*, *supra*, in the instant case the initial stop occurred close to 3:00 a.m., making it highly unlikely that the stop was conducted in public view. Additionally, when a person is standing outside rather than inside a vehicle, he is less likely to believe that he can actually leave the area by entering the car and driving away. *Commonwealth v. Kemp*, 961 A.2d 1247 (Pa. Super. 2008) (en banc), citing *Commonwealth v. Moyer*, 954 A.2d 659 (Pa. Super. 2008). Finally, while the stop would have been brief had it ended after the initial detainment and pat-down, Officer Cilento's choice to continue to interrogate De La Rosa both prolonged the stop, and, gave the objective impression to De La Rosa that he was not yet free to leave -- the hallmark of a custodial detention.

Officer Cilento had some level of reasonable suspicion that illegal activity may be afoot when he detected the odor of burnt marijuana at the beginning of the initial traffic stop. However, the subsequent interrogation of De La Rosa following the uneventful pat-down constituted a custodial interrogation, especially where Officer Cilento should have known that his questioning was likely to lead to an incriminating response based upon: (1) De La Rosa's admission to Officer Cilento that he had smoked marijuana earlier; (2) De La Rosa voluntarily showing Officer Cilento marijuana

wrappings[4] in the car's cup holder area; and (3) the odor emanating from the car when it was first stopped. **See Commonwealth v. Gonzalez**, 979 A.2d 879 (Pa. Super. 2009); **see also Commonwealth v. Ingram**, 814 A.2d 264 (Pa. Super. 2002). Without being given his **Miranda** warnings, De La Rosa's admission and the contraband recovered on his person and in the center console of the vehicle should have been suppressed.[5]

For these reasons, I respectfully dissent.

_____

[4] As the majority notes, when De La Rosa pointed to the wrappings he was indicating to the officer that they were the remnants from smoking marijuana earlier. N.T. Suppression Hearing, 8/27/25, at 8, 12.

[5] However, we agree with the trial court that any contraband or drug paraphernalia found in plain view in the car is admissible.