J-A21034-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                          :            PENNSYLVANIA
            Appellant        :
                                            :
                                            :
            v.              :
                                            :
                                            :
NELSON VILLARONGA           :     No. 3170 EDA 2023

Appeal from the Order Entered November 16, 2023
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0003917-2022

BEFORE: KUNSELMAN, J., NICHOLS, J., and BECK, J.

MEMORANDUM BY BECK, J.:                   **FILED JANUARY 14, 2025**

The Commonwealth appeals the order entered by the Lehigh County Court of Common Pleas ("trial court") granting the motion to suppress filed by Nelson Villaronga (Villaronga) pursuant to ***Miranda v. Arizona***, 384 U.S. 436 (1966). The Commonwealth primarily argues that the trial court erroneously concluded that Villaronga said, "I need a lawyer" when informed of his ***Miranda*** rights, alleging that the videotaped interview establishes that he instead asked, "Why do I need a lawyer?" Alternatively, the Commonwealth maintains that Villaronga volunteered the statements made after that comment and they were not in response to interrogation and therefore admissible. We affirm.

As the case stands in a pretrial posture, we note only that the Commonwealth intends to establish that on the evening of November 24,

2022, Villaronga followed Maynor Vazquez and robbed him. Police arrested Villaronga and charged him with numerous crimes. On April 13, 2023, Villaronga filed an omnibus pretrial motion which included a claim that statements made during a recorded police interview must be suppressed on the basis that "he clearly asserted his right to counsel and that he did not wish to continue to speak … without an attorney present." Omnibus Pretrial Motions, 4/13/23, at ¶ 22 (unnumbered 4). The parties did not call witnesses and agreed that the trial court would decide the motion based on a review of the videotaped interview. The trial court set forth its factual findings based on its review.

> 10. On November 24, 2022[,] at approximately 11:55 P.M., [Villaronga] was interviewed by Detective Yamil Castillo and Detective Harold Bonser of the Allentown Police Department in an interview room at the Headquarters of the Allentown Police Department. Initially, Detective Bonser gathered demographic information from [Villaronga], including such information as his name, his birthdate, where he was born, when he arrived in Allentown, and where and with whom he lived. While [Villaronga] appeared tired and agitated, he was coherent and responded appropriately to all of the questions posed to him. [Villaronga] explained that he had been in New Jersey and then went to Bethlehem for rehabilitation, but relapsed.
>
> 11. Afterwards, Detective Bonser explained to [Villaronga] that he was required to read and go over with him his *Miranda* rights in order to continue to speak with him about a "kid who had been robbed" earlier in the night. Detective Bonser then mentioned that "there's a lot of video there … of the robbery that happened ... where you ran and got caught, there's probably about 30 cameras that we have access to." Immediately thereafter, [Villaronga] indicated that his answer to all questions posed to him would be that he was a drug addict who needs help. Despite no question being asked, [Villaronga] then proceeded to say that he did not rob anyone. [Villaronga] immediately continued his

statement and expressed that "the kid pulled a fast one on me." Detective Bonser stopped [Villaronga] from continuing his thought and reiterated that he needed to read and review his *Miranda* warnings and rights with him.

12. Therefore, Detective Bonser read verbatim to [Villaronga] his *Miranda* rights and warnings from the Allentown *Miranda* Rights and Waiver form. Detective Bonser then allowed [Villaronga] an opportunity to read the Allentown *Miranda* Rights and Waiver form independently. [Villaronga] emphatically stated, "I'm not signing that ... I need a lawyer, come on bro," and simultaneously threw the Allentown *Miranda* Rights and Waiver form across the table towards Detective Bonser. In response, Detective Bonser told [Villaronga] that obtaining a lawyer was his decision.

13. Then [Villaronga] began talking and said that he had not slept in days and was not sure what he wanted to do at that time regarding speaking with them. [Villaronga] indicated that he was a drug addict whose only goal was to use drugs and that he needed help. [Villaronga] reiterated that he did not know what Detective Bonser was talking about regarding a robbery. Detective Bonser told [Villaronga] that he would have explained that to him if he had wanted to speak with them.

14. Once again, [Villaronga] said that the "kid pulled a fast one ... he wanted something ... he tried to beat me." [Villaronga] stated that the kid gave him money in order to get him prostitutes and that "the kid pulled a fast one on me." Detective Bonser once again stopped [Villaronga] from speaking and inquired if he wanted to talk with them. [Villaronga] immediately replied that he did want to speak with them about the situation and that he would sign the *Miranda* form. As [Villaronga] leaned in to sign the *Miranda* form, he indicated that he had a family lawyer and inquired with what he was being charged. Detective Bonser explained that he had not signed the *Miranda* form or waived his *Miranda* rights, thus he could not talk with [Villaronga]. Detective Bonser further explained that if [Villaronga] wished to speak with them, they would need to review the *Miranda* rights and warnings another time. At that time, Detective Bonser reviewed [Villaronga]'s *Miranda* rights with him for a second time. He explicitly advised [Villaronga] that he could stop the questioning at any time but that whatever he did say could be used against him. [Villaronga] then interjected, "The kid's a

fucking idiot. So, he wants to play hardball .... Nobody robbed nobody."

15. Detective Bonser inquired of [Villaronga] if he wanted to read and review the Allentown **Miranda** Rights and Waiver form. [Villaronga] responded that he simply wanted to sleep. It was at that point that Detective Bosner [sic] told him that he was going to place him back in the cell and he escorted him out of the interview room.

Trial Court Opinion, 11/16/2023, at 7-9.[1]

The trial court entered an order granting in part and denying in part[2] Villaronga's motion to suppress. The trial court specifically found that Villaronga clearly requested an attorney, which required the officers to cease questioning. The Commonwealth timely filed a notice of appeal and certified therein that the order substantially handicaps or terminates its prosecution, conferring this Court with jurisdiction to hear the appeal. **See** Pa.R.A.P. 311(d). The Commonwealth raises two issues for our review.

1. Did the trial court err in concluding that [Villaronga] unequivocally invoked a **Miranda** right?

2. Did the trial court err in suppressing [Villaronga]'s statements where, even if [Villaronga]'s initial reference to a lawyer constituted invocation of a **Miranda** right, the suppressed statements were unsolicited by police and were not the product of police interrogation?

Commonwealth's Brief at 4.

Our standard of review is well-established:

_____

[1] The trial court subsequently adopted this opinion as its Pa.R.A.P. 1925(a) opinion. Trial Court Order, 1/11/2024.

[2] The trial court denied Villaronga's motion to dismiss the case.

- 4 -

When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain de novo review over the suppression court's legal conclusions.

*Commonwealth v. Coles*, 317 A.3d 659, 663 (Pa. Super. 2024) (citation omitted).

The critical point for the first issue is whether the trial court's factual finding that Villaronga requested a lawyer is supported by the record. The Commonwealth offers two reasons why this Court should reject that finding. First, the Commonwealth maintains that Villaronga did not say, "I need a lawyer," but that he instead stated: "Why do I need a lawyer?" Commonwealth's Brief at 15. The Commonwealth submits that our standard of review encompasses "[a]n objective review of the audio and visual recording," which will establish that Villaronga "did not, in fact, unequivocally request a lawyer." *Id.* Second, to the extent we disagree with its interpretation of the video, the Commonwealth argues that Detective Bonser's response is evidence that Villaronga did not say he needed an attorney. *Id.* at 16. The detective replied, "Well, I don't know if you need a lawyer, I mean, you were just going to tell me the kid pulled a fast one on you. That's your

decision though."[3]  **Id.**  The Commonwealth claims that this reaction "does not support the lower court's finding."  **Id.**

We begin by addressing the Commonwealth's contentions vis-à-vis the applicable standard of review.  In urging this Court to conduct an "objective review" of the video, the Commonwealth alludes to the proposition that we may review the video de novo without any deference to the trial court's factual findings.  **Id.** at 15.  The Commonwealth does not cite any Pennsylvania case applying that approach, and our independent research likewise has not uncovered any.  "Normally, as an appellate court we do not make findings of fact on our own, but review those of the lower court to determine whether they are adequately supported by the record."  **Spatz v. Nascone**, 424 A.2d 929, 942 (Pa. Super. 1981).  Still, we do not entirely foreclose the notion that this Court may conduct a de novo review, at least in a case like this where the parties did not call any witnesses to supply additional testimony concerning the conversation.  The trial court and this Court are arguably identically situated when the question is simply deciding what Villaronga says on the video.  On the other hand, trial courts are entrusted with credibility determinations, which includes assessing tone and demeanor, which would remain at issue when viewing a video.

---

[3] The trial court did not transcribe this statement in its opinion, but it is clearly articulated on the recording and Villaronga does not dispute its accuracy.  **See** Villaronga's Brief at 15.

In the absence of developed advocacy by the Commonwealth on this point, we apply the familiar principle that we must accept the trial court's factual finding if the record supports it. **See Coles**, 317 A.3d at 663. Applied to this context, if our review of the video established without a doubt that Villaronga clearly stated, "Why do I need a lawyer?" we would reverse the trial court's finding as unsupported by the record. Otherwise, we will defer to the trial court.

Having listened to the relevant exchange, we reject the Commonwealth's argument that Villaronga says, "Why do I need a lawyer?" Simultaneously, we agree that the audio does not definitively establish that Villaronga says, "I need a lawyer," and observe that his speech was somewhat slurred. But the standard of review requires that we accept the trial court's factual finding that Villaronga did, in fact, say "I need a lawyer" because the video does not definitively establish otherwise. Moreover, we note that the trial court cited Villaronga's demeanor in making its finding: "Additionally, as [Villaronga] stated that he 'needs a lawyer,' he contemporaneously threw the [**Miranda** waiver] [f]orm across the table towards Detective Bonser. This physical action showed his unwillingness to waive his rights and his assertion that he needed an attorney." Trial Court Opinion, 11/16/2023, at 21.

Further, we disagree with the Commonwealth that Detective Bonser's response to Villaronga's invocation of his right to counsel is relevant to whether the record supports the trial court's finding. The Commonwealth's

position presumes that the trial court would credit Detective Bonser's testimony and conclude that Villaronga thus did not request a lawyer. The statements, "I don't know if you need a lawyer," and "That's your decision," could be interpreted in many different ways, including, for example, that Detective Bonser heard Villaronga's request for a lawyer and was making an attempt to talk him out of it. Such issues are ripe for cross-examination, and the Commonwealth chose not to present any witnesses. *See* Pa.R.Crim.P. 581(D) (The Commonwealth bears the burden of establishing that the evidence was not obtained in violation of the defendant's rights). If the Commonwealth wished to establish what Detective Bonser heard, it was entitled to call him to the stand and subject him to cross-examination. This may or may not have prompted Villaronga to testify as well.

Based on the record before us, we conclude that Villaronga stated, "I want a lawyer." The detectives were therefore required to immediately stop their questioning. *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981) ("[A]n accused … having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police."); *see also Davis v. United States*, 512 U.S. 452, 454 (1994) (stating that once an accused clearly requested an attorney, the officers are required to "immediately cease questioning").

We now turn to the Commonwealth's second issue, which posits that Villaronga's statements made after invoking his right to counsel were nonetheless admissible because "they were not the result of any interrogation." Commonwealth's Brief at 16 (citing *Commonwealth v. Ingram*, 814 A.2d 264, 271 (Pa. Super. 2002)). The Commonwealth also cites the *Edwards* Court's recognition that statements remain admissible after invoking the right to counsel if the "accused himself initiates further communication, exchanges, or conversations with the police." *Id.* (quoting *Edwards*, 451 U.S. at 485).

The Commonwealth is correct that volunteered statements made after the right to counsel has been invoked remain admissible, as *Edwards* recognizes. The key limitation, however, is that the accused must initiate the conversation. *Edwards*, 451 U.S. at 485. The Commonwealth's argument overlooks this point: "Throughout the interview, while the detective attempted to review the *Miranda* form and waiver with defendant, he gratuitously made statements regarding the robbery." Commonwealth's Brief at 17. Statements made by Villaronga in response to Detective Bonser's repeated attempts to have him waive his *Miranda* rights[4] are not the product of a conversation

---

[4] The United States Supreme Court has made clear that invocation of *Miranda* rights and waiver of those rights are distinct. *See generally Smith v. Illinois*, 469 U.S. 91, 98-99 (1984) (per curiam). "[T]he two must not be blurred by merging them together." *Id.* at 98. Merging the two inquiries risks undermining the *Edwards* bright-line rule because "the authorities through
*(Footnote Continued Next Page)*

- 9 -

initiated by Villaronga. Moreover, we agree with Villaronga that the record reflects there was no clear break in this conversation such that a true "reinitiation" could occur. *See Commonwealth v. Frein*, 206 A.3d 1049, 1069-70 (Pa. 2019) ("Without a stop or a break in conversation, we fail to see how there could be a subsequent reinitiation of conversation.") (emphasis omitted).

Finally, even if we accept that Villaronga initiated the conversation following invocation of the right to counsel, the Commonwealth still cannot prevail because we agree with Villaronga that he was interrogated. After a suspect invokes the right to counsel, police may not interrogate the suspect unless he both initiates the contact and knowingly and intelligently waives the right to counsel. *See Smith v. Illinois,* 469 U.S. 91, 95 (1984) (per curiam). Because Villaronga did not waive his right to counsel after the invocation, detectives could only passively listen to any conversation initiated by Villaronga. *Edwards*, 451 U.S. at 485 ("Had Edwards initiated the meeting on January 20, nothing in the Fifth and Fourteenth Amendments would prohibit the police from merely listening to his voluntary, volunteered statements and using them against him at the trial.").

_____

'badger[ing]' or 'overreaching'—explicit or subtle, deliberate or unintentional—might otherwise wear down the accused and persuade him to incriminate himself notwithstanding his earlier request for counsel's assistance." *Id.* (quoting *Oregon v. Bradshaw*, 462 U.S. 1039, 1044 (1983) (alterations in original)).

Detective Bonser did not simply passively listen to Villaronga speak; he interrogated him. Interrogation encompasses more than direct questioning. "*Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300–01 (1980). The "functional equivalent" of express questioning is "words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response[.]" *Id.* at 301 (footnote omitted). Detective Bonser's statement, "you were just going to tell me the kid pulled a fast one on you," was reasonably likely to elicit an incriminating response because it directly invited Villaronga to discuss his version of events. The detectives' purpose throughout was to speak to Villaronga about the robbery, which they suspected he had committed. The interview began with Detective Bonser informing Villaronga that they wished to ask him about a robbery. It is difficult to see how Villaronga was not interrogated, which is why Detective Bonser read the form in the first place. *See Innis*, 446 U.S. at 299 ("The concern of the Court in *Miranda* was that the 'interrogation environment' created by the interplay of interrogation and custody would 'subjugate the individual to the will of his examiner' and thereby undermine the privilege against compulsory self-incrimination.") (quoting *Miranda,* 384 U.S. at 457-58). Therefore, the Commonwealth's second claim is without merit.

Accordingly, the Commonwealth has failed to establish that the trial court erred as a matter of law in suppressing Villaronga's statements after he invoked his right to counsel.[5]

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/14/2025

---

[5] The trial court concluded that "[t]he interview should have been terminated upon the invocation of [Villaronga]'s **Miranda** rights" and that his "statements should be suppressed." Trial Court Opinion, 11/16/2023, at 10 (numbering omitted). The trial court did not address the statements Villaronga made before he invoked his right to counsel.